[Sac. No. 224. Department One.—September 26, 1896.]

CHARLES W. KELLOGG, AS TRUSTEE OF THE COR-
DELIA SHOOTING CLUB, APPELLANT, v. WILLIAM
KING ET AL., RESPONDENTS.

INJUNCTION—LEASE OF GAME PRESERVE—PREVENTION OF TRESPASS.—An
injunction will lie in favor of a trustee of a hunting club, which has
an exclusive right of hunting upon a game preserve, under a lease from
the owner to the trustee, to restrain hunting thereupon by trespassers
without right.

ID.—TITLE OF LESSORS—POSSESSION.—It is not necessary, in order to sus-
tain the lease, to show a title in fee in the lessors; but it is enough to
show a *bona fide* possession of the premises under a claim of right,
which is itself evidence of title, and may be relied upon as against mere
trespassers.

ID.—RESERVATION OF PASTURAGE—EXCLUSIVE RIGHT OF HUNTING.—A
reservation of pasturage in the lease does not conflict with an exclu-
sive right of hunting conferred by the lease.

ID.—ENJOINING TRESPASS—IRREPARABLE DAMAGES—DESTRUCTION OF
HUNTING PRIVILEGE—SOLVENCY.—The remedy by injunction may be
invoked to restrain acts or threatened acts of trespass, in any instance,
where such acts are, or may be, an irreparable damage to the particular
species of property involved; and the destruction of a hunting privilege,
which is the very substance of the property right held under lease,
makes out a case of irreparable damage, which will sustain an injunc-
tion, regardless of the solvency or insolvency of the trespassers enjoined.

ID.—MULTIPLICITY OF ACTIONS.—An injunction will also lie to prevent a
multiplicity of actions against numerous defendants, or against a tres-
pass of a continuing nature, whose constant recurrence renders the
remedy at law inadequate, unless by a multiplicity of suits.

ID.—ACTION BY TRUSTEE OF EXPRESS TRUST—PARTIES.—A trustee of an
express trust, having a lease in his name as such trustee, may sue to
enjoin trespassers upon the leased property, without joining with him
those for whose benefit the action is prosecuted.

ID.—WILD GAME—RIGHTS OF STATE—PRIVATE PROPRIETORSHIP—PRO-
TECTION OF INDIVIDUALS.—Although the wild game of the state belongs
to the people in their sovereign capacity, and is subject to private
dominion only by authority of the legislature, yet within the provisions
of the statute prescribing in what cases individual proprietorship there-
in may exist, the individual owner is as much to be protected in the
enjoyment of his rights in this species of property as to any other un-
der the law.

APPEAL—FINDINGS—NEW TRIAL.—The appellate court has no power to
make findings of fact, and where a judgment is reversed for insufficiency
of the evidence to justify the decision of the court, a new trial must be
awarded.

APPEAL from a judgment of the Superior Court of Solano County. A. J. BUCKLES, Judge.

The facts are stated in the opinion of the court.

*Young & Powers,* for Appellant.

The findings are not supported by the evidence. A trustee may sue alone. (Code Civ. Proc., sec. 369; *Tyler* v. *Houghton,* 25 Cal. 27; 2 Perry on Trusts, par. 475; *Winters* v. *Rush,* 34 Cal. 136; *West* v. *Crawford,* 80 Cal. 19; *Anson* v. *Townsend,* 73 Cal. 415.) One having possession of premises under a deed, or lease, or license, or even possession without any color of title, as against a wrongful intruder, may maintain the action of trespass against one who wrongfully intrudes. (2 Greenleaf on Evidence, 8th ed., secs. 614, 618, 619; *McCarron* v. *O'Connell,* 7 Cal. 152; *Winans* v. *Christy,* 4 Cal. 71; 60 Am. Dec. 597; *Eberhard* v. *Tuolumne Water Co.,* 4 Cal. 308; *Rogers* v. *Duhart,* 97 Cal. 501; *Attwood* v. *Fricot,* 17 Cal. 38; 76 Am. Dec. 567; *Taylor* v. *Woodward,* 10 Cal. 91; Bliss on Code Pleading, sec. 22; Taylor on Landlord and Tenant, pars. 772, 774; *McCarron* v. *O'Connell, supra.*) Wild animals are the subject of private ownership while living on land of persons claiming them. (Civ. Code, sec. 656; *Blades* v. *Higgs,* 11 H. L. Cas. 621, cited in 18 Am. Dec. 553.) The driving away of the game, the destruction of the useful purpose for which these premises are leased, namely, for sporting purposes, is an irreparable injury, which cannot be estimated in damages, and entitles plaintiff to the relief demanded. (Code Civ. Proc. sec. 526, subds. 1, 2; *Fitzgerald* v. *Urton,* 5 Cal. 308; *Merced Min. Co.* v. *Fremont,* 7 Cal. 317; 68 Am. Dec. 262; *Taylor* v. *Woodward, supra; Weimer* v. *Lowery,* 11 Cal. 104; *Natoma etc. Co.* v. *Clarkin,* 14 Cal. 545; *Halleck* v. *Mixer,* 16 Cal. 574; *Hicks* v. *Michael,* 15 Cal. 107; *Paige* v. *Akins,* 112 Cal. 401; *People* v. *Morrill,* 26 Cal. 336; *More* v. *Massini,* 32 Cal. 590; *Hess* v. *Winder,* 34 Cal. 270; *Parrott* v. *Byers,* 40 Cal. 614; *Silva* v. *Garcia,* 65

Cal. 591; 3 Pomeroy's Equity Jurisprudence, 2d ed., secs. 243, 1355, 1356.)

*L. G. Harrier*, and *J. M. Gregory*, for Respondents.

Appellant must show title to land which he would enjoin respondents from entering. This he fails to do. (*Moore* v. *Massini*, 43 Cal. 389.) And he must show an exclusive possession of the land. As he holds only by his lease, which is not exclusive, he fails. (*Wellington* v. *State*, 52 Ark. 266; General Digest V, Trespass I; *Morrison* v. *Wilson*, 30 Cal. 344; *Montgomery* v. *Sturdivant*, 41 Cal. 290; *Anderson* v. *Yoakum*, 94 Cal. 228; 28 Am. St. Rep. 121; *Walden* v. *Conn*, 84 Ky. 312; 4 Am. St. Rep. 204.) Appellant has shown no right to sue for an injunction, as he has shown no authority from the Cordelia Club. (2 Estee's Pleadings, 2552.) No one has a property in animals denominated "game." Ownership is in the people of the state. (*Magner* v. *People*, 97 Ill. 333; *American Exp. Co.* v. *People*, 133 Ill. 649; 23 Am. St. Rep. 641; Civ. Code, sec. 656.) Appellant is not entitled to an injunction, as he failed to show the injury to be irreparable. (1 High on Injunctions, secs. 9, 699.) He has no right to an injunction when there is a remedy at law. (*Leach* v. *Day*, 27 Cal. 643; *Mechanics' Foundry* v. *Ryall*, 75 Cal. 603; 5 Am. St. Rep. 476; 1 High on Injunctions, sec. 29.) Appellant, to obtain an injunction, should show that respondents are not responsible in damages.

VAN FLEET, J.—This is an action for an injunction to restrain the defendants, some forty in number, from threatened acts of trespass upon plaintiff's premises by entering thereon, and destroying his game preserve by shooting, killing, and driving away the wild game thereon.

The evidence, which was quite full, and wholly without conflict, tends to show, substantially, as alleged in the complaint, that plaintiff, as trustee of the Cordelia Shooting Club, an association of sportsmen, of which plaintiff is the president and executive officer,

rents under a written lease, at a yearly rental of twelve hundred dollars, a large body of unreclaimed swamp and overflowed land in Solano county for the purposes of a game preserve ; that under his lease plaintiff has taken and now holds possession of said land, and has completely inclosed, by means of a substantial barb wire fence and natural boundaries, consisting of wide and deep sloughs, the greater part of said land, some three thousand acres in extent ; that within such inclosure are numerous ponds, sloughs, and lagoons, and wide reaches of overflowed tule lands, which afford inviting and favorite feeding grounds for wild game fowl, such as ducks, geese, rail, and snipe, and where, more particularly during the months intervening the 1st of September and the 1st of March, those species of game birds are in the habit of returning annually and congregating in great numbers, and thereby affording valuable and very desirable hunting privileges.

That within such inclosure plaintiff has placed arks and other buildings and structures suitable and necessary to a complete and convenient shooting resort for the use and enjoyment of the members of said club, and employs keepers to look after and protect the said premises; and for the purpose of further preserving said premises to the use and enjoyment of said club, and to warn all others than members thereof from invading and encroaching upon said preserve, plaintiffs, soon after taking possession of said premises, did, in September, 1894, have posted and set up, and has since maintained throughout said inclosure in and about the ponds, sloughs, and other bird resorts therein, between four and five hundred notices stating that said premises were inclosed, and warning all persons from trespassing thereon, either for shooting or other purposes; that such notices are in large type and so conspicuously and numerously distributed over said inclosure as to necessarily arrest the attention of any person intruding thereon.

That these defendants, in pursuance of a concerted

design and common purpose entered into by them to interfere with and defeat plaintiff's rights and those of said club in said premises, and to prevent their exclusive enjoyment thereof, did during the months of September, October, and November, 1894, and during plaintiff's possession of said premises, on divers and numerous occasions, and in various numbers, invade and intrude upon said inclosure, both by day and by night, and shot, killed, and carried away large numbers of said game birds, and largely frightened away and dispersed such birds as they did not kill; shot into and broke down plaintiff's said notices, and threatened and intimidated his employees in charge of said preserve, and otherwise violated plaintiff's rights in various ways. That while upon said premises each of the defendants, in addition to the warning in said posted notices, was personally served with a notice in writing, signed by plaintiff as lessee, stating that said premises were leased and inclosed by him, and warning said defendants to trespass no further thereon but to remove therefrom; but such notice and warning were entirely ignored by defendants and each of them, and a number of said defendants returned repeatedly to said premises after such warning. That the defendants threatened to continue and repeat their said acts of trespass, and to enter upon said premises and hunt and kill such game birds whenever they so desire, regardless of plaintiff's rights therein; that the effect of constant and indiscriminate shooting at said birds, such as is practiced and persisted in by the defendants, is and has been largely to frighten said birds and permanently drive them from said resort, and deter and prevent their return thereto, and thereby to wholly destroy the value of plaintiff's said premises as a game resort and preserve, and work irreparable injury thereto, which cannot be compensated in money damages.

That owing to the great number of defendants, and their constant, continuous, and repeated acts of trespass, the law furnishes plaintiff no adequate protection

through its ordinary processes, and he is compelled to resort to equity for relief.

Despite this showing, the learned judge of the superior court, in substantial effect, found all the material facts against the plaintiff and denied him any relief. From the judgment and an order denying him a new trial plaintiff appeals, contending that the findings are wholly without support in the evidence.

The respondents, however, notwithstanding the uncontradicted character of the evidence, urge that the judgment is right, and assign various reasons why it should not be disturbed. It is claimed by them that the evidence is insufficient to show ownership or title in the leased premises in plaintiff's lessors, and the finding is in accord with this claim. Aside from the fact that we think there is sufficient evidence in the record to establish *prima facie* ownership in the lessors, the fact is not essential to plaintiff's recovery. Title in fee is not necessary to a recovery for trespass, and, although title may be alleged, it is not required to be shown where, as here, the evidence shows *bona fide* possession of the invaded premises under claim and color of right. Possession is itself evidence of title (*Winans* v. *Christy*, 4 Cal. 70; 60 Am. Dec. 597; *Castro* v. *Gill*, 5 Cal. 40); and a party may rely upon his possession as against a mere trespasser. (*Fitzgerald* v. *Urton*, 5 Cal. 308; *McCarron* v. *O'Connell*, 7 Cal. 152; *Merced Min. Co.* v. *Fremont*, 7 Cal. 317; 68 Am. Dec. 262; *Taylor* v. *Woodward*, 10 Cal. 91; *Weimer* v. *Lowery*, 11 Cal. 104.)

It is also claimed by respondents that the evidence justifies the finding that plaintiff acquired no exclusive right to the possession of the leased premises under his lease; that the only right granted thereunder was the privilege of hunting thereon, and this not an exclusive one. This claim, like the finding which upholds it, is not only directly against the evidence, but is evidently based upon a total misconstruction of the lease in question. By that instrument the owners of the land "lease and demise unto said party of the sec-

ond part, his heirs and assigns, all that certain tract of swamp and overflowed land situate," etc., "for the term of four years from the twenty-second day of July, 1893, at the yearly rent or sum of twelve hundred dollars." The lease provides that "the parties of the first part hereby reserve to themselves, their heirs and assigns, the right to pasture said lands, and the right of way over and upon said lands, and every part thereof, and the party of the second part covenants not to in any way disturb such rights reserved as aforesaid, and the said parties of the first part covenant that the said party of the second part, paying the said yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly hold and enjoy the said demised premises for the term aforesaid, for the sole purpose of hunting game thereon, and the party of the second part hereby covenants, promises, and agrees that the total number of persons who may be directly or indirectly authorized by him to hunt over and upon said premises shall at no time during the term of such lease exceed forty." The party of the second part is described as "Charles W. Kellogg, of San Francisco, California, as trustee for the Cordelia Shooting Club of that city."

While admitting that if plaintiff had the exclusive right of possession he would be the "owner" for the purpose of prohibiting others from hunting on his land, respondents argue that no such right is given, because the lessors reserve to themselves the right of pasturage, and also restrict the number of persons plaintiff can admit to the hunting privileges; that by the reservation of the right of pasturage the lessors reserved to themselves "the right to open the grounds to the world," and, in restricting the number of hunters plaintiff can admit, "they reserved all hunting privileges over what forty men can do" to themselves. Manifestly, the paper is open to no such construction. The reservation of the pasturage in no way affects or militates against the exclusiveness of plaintiff's rights in the premises as a hunting preserve, which the lease

clearly contemplates; and the restriction of the number who shall be permitted to hunt obviously has in view the preservation of the premises as a resort for wild game, and that its value in that respect may not be entirely destroyed during the lease by the admission of an unlimited number of hunters.  There is nothing in the language to indicate an intention to reserve to the lessors any part of the hunting privileges during the term.  Even if such were the terms of the lease, however, none of the defendants attempt to show that they held any privilege or license from the owners to hunt thereon.

It is further contended that the evidence does not make a case entitling plaintiff to an injunction, for the reasons, that it does not appear that any irreparable injury has been or will be worked by the acts or threatened acts of the defendants, and that it does not appear that plaintiff has not an adequate remedy at law, nor that defendants are unable to respond in damages.

The mere fact that one has a right of action at law will not prevent his right to equitable relief by way of injunction against a threatened trespass, if under the circumstances the legal remedy would fail of affording adequate relief against the impending wrong.  It is well settled that the remedy by injunction may be invoked to restrain acts or threatened acts of trespass in any instance where such acts are or may be an irreparable damage to the particular species of property involved.  And in such case the question of the solvency or insolvency of the wrongdoer is an immaterial factor.  It is the nature of the injury, and not the incapacity of the party to respond in damages, which determines the right.  Where the effect of the act complained of is or may be to largely impair or destroy the substance of the estate, by taking from it something which cannot be replaced, it may be enjoined, irrespective of the ability of the defendant to respond in damages.

These principles are upheld in the leading case of

*Merced Min. Co.* v. *Fremont, supra,* following the modern English doctrine first announced by Lord Thurlow in *Flamang's case,* cited in *Mitchell* v. *Dors,* 6 Ves., Jr., 147. Originally, the right to restrain by injunction mere acts of trespass seems to have been confined to instances where the injury was to the freehold, in the nature of waste, such as the taking of wood or timber, extracting the precious metals or other valuable minerals, and the like. But this limitation of the right appears to have been departed from in the later cases, and as stated by Mr. High: " The jurisdiction may now, however, be regarded as well established, although it is still sparingly exercised, being confined to cases where, from the peculiar nature of the property affected by the trespass, or from its frequent repetition, the injury sustained cannot be remedied by an action for damages, and where it may, therefore, be properly termed irreparable. The foundation of the jurisdiction rests in the probability of irreparable injury, the inadequacy of pecuniary compensation, and the prevention of a multitude of suits; and where facts are not shown to bring the case within these conditions the relief will be refused. Equity will not, therefore, enjoin a mere trespass to realty, as such, in the absence of any element of irreparable injury. But where, owing to the peculiar character of the property in question, the trespass complained of cannot be adequately compensated in damages, and the remedy at law is plainly inadequate, equity may properly interfere by injunction." (1 High on Injunctions, sec. 697.)

And Mr. Story, after stating the same fact as to the original lines of the jurisdiction says: " It may be remarked, in conclusion, upon the subject of special injunctions, that courts of equity constantly decline to lay down any rule which shall limit their power and discretion as to the particular cases in which such injunctions shall be granted or withheld. And there is wisdom in this course; for it is impossible to foresee all the exigencies of society which may require their aid and assistance to protect rights and redress wrongs.

The jurisdiction of these courts, thus operating by way
of special injunction, is manifestly indispensable for
the purpose of social justice in a great variety of cases,
and therefore should be upheld by a steady confi-
dence." (Story's Equity Jurisprudence, secs. 856 b, 863,
929, 948.. And see, also, *Poughkeepsie Gas Co.* v. *Citizens'*
*Gas Co.*, 89 N. Y. 493.)

If these principles are applicable to this case, and we
perceive no good reason why they are not, the objection
under consideration is not tenable.   The property right
which is here the subject of injury is of a peculiar and
exceptional character.   The sole value of the invaded
premises to the plaintiff is as a game preserve, by reason
of its features as a resort for wild game.   This feature
of the property the evidence shows is being taken from
it, and its value largely, if not wholly, destroyed by the
acts of defendants.   And it requires little, if any, argu-
ment to show that the injury thus committed is and
will be irreparable, as being beyond any method of
pecuniary estimation.   As suggested by counsel, it is
not so much the value of the birds killed which consti-
tutes the injury to plaintiff.   That could be estimated
in dollars and cents.   But it is the destruction of the
hunting privilege, by driving away the birds and deter-
ring their return—a thing which, once accomplished,
cannot be restored, and which constitutes an injury
that cannot be estimated in money damages.   It seems
to us that this showing, if true, makes out a case of
irreparable damage from the destruction of the very
substance of the property right which plaintiff holds
under his lease.

But there is, moreover, another ground upon which,
under the evidence, plaintiff should be entitled to the
equitable remedy sought—the avoidance of a multi-
plicity of actions.   It is quite manifest that no adequate
relief could be had at law by a plaintiff in such a case
as is here disclosed without the bringing of a separate
action against each individual defendant.   "The neces-
sity of preventing a multiplicity of suits," says Mr.

High, "affords another exception to the rule, and will warrant the interposition of the strong arm of equity, even though there be a remedy at law." (High on Injunctions, sec. 700.) And again says that author: "So a trespass of a continuing nature, whose constant recurrence renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by injunction." (High on Injunctions, sec. 697.)

The further objection that plaintiff had not capacity to bring the action is untenable. Under his lease plaintiff is a trustee of an express trust, and, as such, entitled to sue without joining with him those for whose benefit the action is prosecuted. (Code Civ. Proc., sec. 369; *Tyler* v. *Houghton*, 25 Cal. 27.)

The remaining points made in support of the judgment are without merit, and need not be specially noticed. The conclusions of the court below would seem to proceed upon the theory that there is no such thing as an exclusive private ownership or proprietorship in wild game, beyond such as may be acquired by reducing it to actual possession by killing or capture; and that for this purpose it may be pursued and taken wherever it may be found. This view of the law is incorrect. The wild game of the state, it is true, belongs to the people in their sovereign capacity, and is not subject to private dominion to any greater extent than the people through the legislature may see fit to make it. (*Ex parte Maier*, 103 Cal. 476; 42 Am. St. Rep. 129.) But the legislature has seen fit to prescribe the limit where public proprietorship ends and that of the individual commences; and, when within the provisions of such statute, an individual is as much to be protected in the enjoyment of his rights in this species of property as in any other under the law.) Section 656 of the Civil Code provides that: "Animals wild by nature are the subject of ownership while living only when on the land of the person claiming them, or when tamed or taken and held in the possession, or disabled and immediately pursued." While these wild birds, therefore,

are within the plaintiff's inclosure, he has under this statute such rights in them as entitle him to protect them from invasion by those not authorized to be there, and any person violating such rights is as much a trespasser as though entering unbidden the plaintiff's dwelling.

We think upon the evidence, standing uncontradicted, the plaintiff made a case entitling him to the relief asked, and, as the findings are against such evidence, they cannot stand.

Plaintiff asks us, in the event the judgment is reversed, to order a judgment in his favor, without the necessity of a new trial. This we are not at liberty to do. This court has no power to make findings of fact—that being the exclusive province of the trial court. Since the findings here are against the plaintiff, a judgment we should order in his favor would be exactly in the position of the present judgment—unsupported by the findings. It is only where the findings made by the lower court are such as to support a judgment for the the appellant that this court, in reversing a judgment erroneously entered thereon, has jurisdiction to order a proper judgment to be entered. In the present case, therefore, there must be a new trial.

Judgment and order reversed, and cause remanded for a new trial.

HARRISON, J., and GAROUTTE, J., concurred.