[Civ. No. 1128.  Third Appellate District.—August 5, 1913.]

## M. BLEVINS et al., Respondents, v. PAT MULLALLY et al., Appellants.

ANIMALS—DUTY TO RESTRAIN FROM TRESPASSING—COMMON-LAW RULE.—At the common law every man was bound to keep his beasts within his own close, on penalty of answering in damages for injuries resulting from their being permitted to range or run at large.

ID.—MODIFICATION OF COMMON LAW BY STATUTE.—This rule of the common law was abrogated by the legislature of this state in 1850 (Stats. 1850, pp. 131, 214). But in 1863 (Stats. 1863, p. 581; amended, Stats. 1871–2, p. 580), the common-law rule was restored as to Santa Clara County; and in 1878 (Stats. 1877–8, p. 176) it was revived in several other counties, including Colusa. With respect to Santa Clara County and the several counties, including Colusa County, mentioned in the statute of 1877–8, the common-law rule upon the subject of trespassing animals still prevails in its entirety. It was not abrogated by the estray law of 1901 (Stats. 1901, p. 603), nor by the general law of 1907 (Stats. 1907, p. 999) restoring in part the common-law rule.

ID.—ACTION FOR DAMAGES FROM TRESPASSING ANIMALS.—Therefore, an action for damages for trespass by cattle can be maintained in those counties in which the common law was revived by the act of 1878 (Stats. 1877–8, p. 176), irrespective of whether or not the land trespassed upon was inclosed, or whether or not it was planted to crops or fruits.

ID.—CONSTRUCTION OF TRESPASS AND FENCE LAWS.—In construing the statutes of 1878 and of 1907, above referred to, the maxim *"Expressio unius est exclusio alterius,"* should not be invoked.

ID.—"EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS."—Where a statute on its face appears to confine its provisions to particular persons or things by enumerating them, and no reason appears why other persons or things not so enumerated should not have been included, and a construction of the statute according to the maxim *"Expressio unius est exclusio alterius"* would obviously work injustice, courts will give the act an interpretation according to its general spirit, rather than to its letter, so as to reach a result harmonious with good sense and justice.

ID.—TRESPASS LAW OF 1907—WHETHER CONSISTENT WITH COMMON LAW.—There is no repugnancy or inconsistency between the common law relating to trespassing domestic animals and the statute of 1907 (Stats. 1907, p. 999). Indeed the rule promulgated by that statute is the common-law rule, although it limits the application of such rule to certain special cases.

Id.—COMMON LAW AS RULE OF DECISION—INCONSISTENCY WITH STAT-
UTE.—The repugnancy which must exist between our constitutions
or local laws and the rule at common law, in contemplation of sec-
tion 4468 of the Political Code, must be such that it is impossible
that the two can exist and operate at the same time without infring-
ing upon the province of each other.

Id.—INJUNCTION AGAINST TRESPASS BY ANIMALS.—The owner of unin-
closed land in Colusa County, used by him for grazing livestock, is
entitled to injunctive relief against repeated trespasses by cattle
belonging to neighboring proprietors.

APPEAL from a judgment of the Superior Court of Colusa
County and from an order refusing a new trial. H. M. Al-
bery, Judge.

The facts are stated in the opinion of the court.

Alva A. King, Ernest Weyand, and Thos. Rutledge, for Ap-
pellants.

U. W. Brown, and Seth Millington, for Respondents.

HART, J.—The plaintiffs were given judgment enjoining
the defendants from "causing, allowing or permitting their
cattle or stock, or other cattle or stock in their custody or
under their control, from entering and trespassing upon the
lands of plaintiffs, situated in Colusa County," and described
in the complaint, and awarding damages against the defend-
ants in the sum of three hundred dollars for the alleged tres-
passing of their cattle and stock upon said land prior to the
commencement of this action.

This appeal is by the defendants from the judgment so
rendered and entered and from the order declining to grant
their motion for a new trial.

The plaintiffs are the owners of a large tract of uninclosed
land, situated near the town of Arbuckle, in Colusa County,
which they have used for many years and were using, at the
time of the commencement of this action, for sheep raising
purposes.

The defendants own a large tract of land situated in the
neighborhood of and in close proximity to the lands of the
plaintiffs.

. The complaint alleges that the defendants reside near the lands of the plaintiffs above referred to and that they are now and have been for a long time prior to the commencement of this action the joint owners of, and have under their control, large numbers of cattle, to wit: "500 head, and stock of all kinds, which said cattle and stock they carry and graze upon lands in the neighborhood of, and near to, the said lands described herein, as being owned by, and being in the possession of, and used by, these plaintiffs, as hereinbefore described." It is then alleged that the defendants have caused and permitted and are causing and permitting large numbers of said cattle and other stock, owned by and under their control, to enter upon and occupy the premises owned by the plaintiffs and described in the complaint; that such trespasses are permitted by the defendants during all seasons of the year and especially in the winter and spring months; that the cattle and stock of the defendants so wrongfully permitted to enter upon said lands have destroyed and continue to destroy the feed, grasses, and crops grown and growing thereon, all of which said feed has been and is now necessary for the support and maintenance of the sheep owned by the plaintiffs; that said cattle of the defendants so permitted to enter upon and occupy the lands of the plaintiffs have run, harassed, annoyed, interfered with, and destroyed and do now run, harass, destroy, etc., the sheep belonging to the latter; that the result of all which is that the sheep of the plaintiffs have been prevented and are now being prevented from reaching their full growth and condition for bearing, and that said cattle and other stock of the defendants have run, harrassed, and annoyed said sheep of the plaintiffs prior to and during the lambing season of each year, thereby preventing the said sheep from reaching their full bearing capacity and destroying the offspring of said sheep, etc., etc. It is further alleged that the plaintiffs "have on numerous occasions taken up and corralled large numbers of said cattle of said defendants when the same were trespassing upon said lands, and immediately notified defendants that they had so taken up said cattle, and demanded damages from said defendants for allowing their cattle and other stock to enter upon said premises described herein, and thereby tramping, cutting up and injuring the soil, and destroying the grass and feed upon said

premises and running, annoying, harassing and interfering with and destroying the said sheep; that plaintiffs have taken up large numbers of said cattle under Act No. 1060, relating to estrays, which act was approved March 23, 1901, and amended last in 1909, and have compelled defendants to pay thirty cents per day for each of said cattle so taken up, all of which has proven of no avail, and defendants, despite the taking up of said cattle, continue to allow and cause, and threaten to continue to allow and cause said cattle and other stock to enter upon said premises described herein, and thereby tramp, tear up and injure the soil, and destroy the feed grown and growing upon said premises, and injure the same for the growing of grass in the future . . . " It is then alleged that the repeated trespasses by the cattle and other stock of the defendants upon the lands of the plaintiffs, if permitted to continue, will compel the latter to bring numerous suits against the defendants for damages, and compel the defendants to pay for keeping them, under the provisions of said act above referred to, "all of which remedy is inadequate, and will not cause defendants to desist from said acts described herein, and it will be extremely difficult to estimate the damages, as it is impossible to ascertain or otherwise determine the injury caused plaintiffs by the acts of said defendants, or by any method of pecuniary estimation, and restraint is necessary to prevent said damage and injury and to prevent a multiplicity of actions at law, and plaintiffs have no plain, speedy, adequate or any remedy at law."

A general demurrer to the complaint was overruled and the defendants answered, specifically denying the averments of said complaint and, furthermore, by way of a special defense, alleged that the lands of plaintiffs described in the complaint were uninclosed and not planted to growing crops, or fruit trees or vines, etc. A cross-complaint was also filed by the defendants, claiming damages against the plaintiffs for taking up the cattle of the defendants, keeping them with insufficient food and refusing to deliver over to the defendants the cattle so taken up when the latter appeared and demanded the possession of the same, and offered to pay the plaintiffs the amount which they were entitled to claim as damages, expenses, and costs, under the act relating to estrays above referred to.

The issues thus presented having come to trial, the defendants, on the close of the case for the plaintiffs, asked for a nonsuit, which was denied. The demurrer to the complaint and said motion submit for decision on this appeal this question: Are the plaintiffs authorized to maintain an action for trespass committed upon uninclosed lands by domestic animals belonging to one other than the owner or possessor of such lands? Another question discussed is whether a court of equity may, by way of injunction, interpose relief in behalf of one upon whose uninclosed land such trespasses are repeatedly committed by the cattle or other stock of another, and manifestly its solution will depend, in the first place, upon the decision of the principal question involved in this appeal as above propounded, and if said question be answered affirmatively, then upon the proposition whether the circumstances disclosed by the record are such as to show that the remedy in the ordinary course of law is adequate or inadequate.

1. At common law, "every unwarrantable entry on another's soil the law entitles a trespass *by breaking his close,* the words of the writ of trespass commanding the defendant to show cause *quare clausum querentis fregit.*" (3 Black. 210.) And this was true whether the land was inclosed or uninclosed, the same learned authority saying: "For every man's land is, in the eye of the law, inclosed and set apart from his neighbor's; and that either by a visible and material fence, as one field is divided from another by a hedge, or by an ideal, invisible boundary existing only in contemplation of law, or when one man's land adjoins to another's in the same field." Under the rule as thus stated, a party was answerable not only for his own trespass, but that of his cattle also; "for, if by his negligent keeping they stray upon the land of another (and much more if he permits or drives them on), and they there tread down his neighbor's herbage, and spoil his corn and trees, this is a trespass for which the owner must answer in damages." (Id.)

On the 13th day of April, 1850, the first legislature which convened after the adoption of the constitution of 1849 passed a law whereby it was declared that "the common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of the state of California, shall be the rule of decision in

all the courts of this state,'' and this is the rule at the present time. (Pol. Code, sec. 4468.) But prior to the enactment of the foregoing provision, the same legislature passed an act "Concerning Lawful Fences, and Animals Trespassing on Premises lawfully inclosed" (Stats. 1850, p. 131), and, on the twelfth day of April, 1850—the day immediately preceding that on which the above mentioned act making the common law the rule of decision in this state—it passed the act "Concerning Marks and Brands." (Stats. 1850, p. 214.) At the second session of the legislature the act "To regulate Rodeos" and the act "Concerning Judges of the Plains" were passed, and at subsequent sessions acts regulating or defining lawful fences and concerning other matters affecting the question of the ranging and grazing of cattle of all kinds were passed. Many of these latter acts were special statutes or applicable only to certain counties named therein. The effect of the legislation thus referred to was to establish in this state a rule directly in conflict with the rule of the comomn law of England, hitherto mentioned, that every man is bound to keep his beasts within his own close, on penalty of answering in damages for injuries resulting from their being permitted to range or run at large. (*Waters* v. *Moss,* 12 Cal. 535, [73 Am. Dec. 561]; *Comerford* v. *Dupuy,* 17 Cal. 308; *Logan* v. *Gedney,* 38 Cal. 579.)

In 1863 the legislature passed an act which applied solely to the county of Santa Clara, providing for the taking up of all kinds of domestic animals found upon the farm, "or other inclosed premises," and for damages for such trespasses. (Stats. 1863, p. 581.) In 1872 the legislature amended said act in several particulars. (Stats. 1871–2, p. 580.) Among these amendments was that of the first section, which was made to so read as to authorize any person finding any of the domestic animals therein specified "upon his farm, land or other premises," to demand and receive the damages for the trespass as prescribed by section 2 of said act. This act was considered by the supreme court in the case of *Hahn* v. *Garratt,* 69 Cal. 146, [10 Pac. 329], and held to have had the effect of restoring to Santa Clara County the common-law rule as to trespassing animals.

The legislature of 1877–8 passed an act entitled "An act concerning trespassing of animals upon private lands in cer-

tain counties in the state of California." (Stats. 1877–8, p. 176.) This act was confined in its operation to certain counties in the state (Colusa County being among them), its provisions having been made applicable to all of some of the counties and to certain sections only of others named in the act. Section 1 of said act provided, as to the counties to which it was made applicable, that "it is unlawful for any animal, the property of any person, to enter upon any land owned by or lawfully in the possession of any person other than the owner of such animal." Section 2 provided for the recovery of damages by the owner or possessor of land against the owner or the possessor or person chargeable with the care of the animal or animals found trespassing upon such land. Section 17 expressly repealed "all acts and parts of acts, in so far as the same may conflict with this act."

The effect of the foregoing act, so far as were concerned the counties to which it was applicable, was to repeal the act entitled "An act concerning lawful fences and animals trespassing on premises lawfully inclosed" (Stats. 1850, p. 131), the act to "regulate Rodeos" (Stats. 1851, p. 445) and the act "Concerning Judges of the Plains." (Stats. 1851, p. 515.) In fact, the result of the passage of said act was to restore the operation of the common-law rule as to trespassing animals to those counties or portions of counties to which its operation was limited.

From the foregoing review of the legislation in California bearing upon or affecting the main question involved in this controversy, these propositions are obviously deducible: 1. That, up to the time of the passage of the amendments in 1872 of the act of 1863, the rule of the common law of England respecting trespassing animals was never the rule of decision as to that subject in any portion of California; 2. That the statute of 1863, as amended in 1872, revived the vitality of that rule in the county of Santa Clara only, and that the statute of 1877–8, produced a like effect solely in those few counties designated therein; 3. That, with respect to Santa Clara County and the several counties, including Colusa County, mentioned in the statute of 1877–8, the common-law rule upon the subject of trespassing animals still prevails, unless subsequent or more recent legislation than that to which we have above referred affecting the question

has destroyed the force of said rule throughout the whole state. And thus we are brought to the consideration of the recent legislation with which this inquiry is directly concerned and upon the construction of which the decision of this controversy hinges.

The latest expression of the legislature directly relating to the subject under consideration is to be found in an act entitled "An act concerning trespassing animals upon private lands, and the recovery of damages resulting therefrom," approved March 23, 1907. (Stats. 1907, p. 999.)

There is also the estray law of 1901 (Stats. 1901, p. 603), which act was amended in some particulars in 1909 (Stats. 1909, p. 1079 et seq.), and parenthetically it may here be stated that counsel for the plaintiffs make the claim that the effect of the passage of said law was to revive the operation of the rule of the common law respecting trespassing animals in this state.

The first section of the statute of 1907 reads as follows:

"Section 1. It is unlawful for any person, firm or corporation owning, or having possession of, any animal, to suffer or permit such animal to break into and enter upon any land owned by, or lawfully in the possession of any person, firm or corporation, other than the owner of such animal, in all cases where such land is planted to growing crops, vines, fruit trees or vegetables, and is at the time entirely inclosed by a substantial fence or other inclosure.".

The succeeding sections prescribe the damages which may be recovered for the trespasses mentioned in section 1 and the means whereby the enforcement of any judgment obtained in actions brought under the provisions of the act may be coerced without the necessity of observing some of the requisites essential to the enforcement of ordinary judgments in certain cases.

The sixth section of the act reads: "All acts and parts of acts in conflict with this act are hereby repealed; *provided,* nothing in this act shall be deemed or construed to repeal an act of the legislature of this state relating to estrays, approved March 23, 1901."

We are not impressed with the suggestion that the estray law of 1901, either in its original draft or as amended by the legislature of 1909, had the effect of reviving the common-law

rule as to trespassing animals in California. The act of 1863, as amended in 1872, which was considered in *Hahn v. Garratt*, 69 Cal. 146, [10 Pac. 329], contains a provision which expressly restored the common-law rule to Santa Clara County, to which county only that act applied, and, therefore, that case is not, as counsel for the plaintiffs contend is true, an authority supporting their contention that the estray law of 1901 had a like effect in the entire state.

The pivotal question here, however, is as to the effect of the passage of the trespass act of 1907 upon previous legislation relating to that subject.

It is argued by the defendants: 1. That, under the rule of construction, *expressio unius, est exclusio alterius,* the legislature, having, by the act of 1907, limited the application of the common-law rule respecting trespassing animals, must be taken to have excluded, *ex industria,* the right to maintain actions for damages for the trespasses of domestic animals upon lands either uninclosed or inclosed but not planted to growing crops or fruit trees, etc. In other words, the position of the defendants is this: That, since it is true that the common-law rule that "every man must, at his peril, keep his beasts within his own close," has never prevailed or existed as a general rule in this state (*Hahn v. Garratt,* 69 Cal. 146, [10 Pac. 329], and *Merritt v. Hill,* 104 Cal. 184, [37 Pac. 893], and the other cases cited above), the rule established by the statute of 1907 (which is a general law and, so it is claimed, designed to have a uniform operation), is a limitation of the right to invoke the common-law rule in its entirety, and that, therefore, no action for damages resulting from the trespass of cattle or other stock upon private lands will lie or can be maintained, unless such trespasses are shown to have been committed upon lands which, at the time the injury is committed, are planted to growing crops, vines, fruit trees or vegetables, and entirely inclosed by a fence or other substantial inclosure; 2. That the section of the act of 1907 which expressly repeals "all acts and parts of acts in conflict with this act," necessarily repeals the act of 1877–8, because, while the latter act recognizes the full force of the common-law rule, the former expressly limits the application of said rule to special or a particular class of cases, and that there is, there-

fore, essentially a conflict between the rule so established and the rule of the common law as to trespassing animals.

The whole question here is manifestly one of legislative intent. Did the legislature, by the act of 1907, intend to stop the operation of the common-law rule as to trespassing animals in Colusa and other counties to which said rule was restored by the act of 1877–8?

Section 1 of article XXII of the constitution of 1879 provides, *inter alia,* "that all laws in force at the adoption of this constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the legislature."

It is not claimed, nor so far as we are advised, could it be claimed, that the act of 1877–8 above referred to is inconsistent with any of the provisions of the present constitution of the state. Therefore, said act is the subsisting law in those counties to which it applies, unless the effect of the passage of the act of 1907 has been to repeal it.

It must be admitted that there appears, upon its face, to be considerable force in the contention that, the legislature having apparently intended, by the passage of the act of 1907, to establish a general rule for the whole state, the effect of the passage of said act was to set aside or abrogate any other rule existing prior to and at the time of the passage of said act upon that subject; or, in other words, since, in practical effect, the legislature has, by said statute, adopted a part only of the common-law rule respecting trespassing animals, the parts thereof not so adopted were intended to be excluded as parts of the law of this state, and that if, when that act was passed, the common-law rule in its entirety prevailed in California, or in any of the political subdivisions thereof, then the effect of the passage of said act was to abrogate said rule as it thus existed and to substitute therefor the part so adopted. That argument, we say, is plausible, but it is by no means conclusive, and, perceiving, as must readily be perceived, the serious consequences which would certainly flow from upholding it, it should not be sustained unless it plainly appears from the language of the statute, when tested by the usual or ordinary canons of statutory construction, that no other course is open or at all permissible.

It is not in all cases where it may appear to be applicable that, in the construction of statutes, the maxim, *expressio unius est exclusio alterius,* should be invoked. The rule should be applied, of course, where appropriate and necessary to the just enforcement of the provisions of a statute, according to what clearly appears to be the true legislative intent with reference thereto, or so as to effectually carry out the object of the act without entailing upon any particular classes of persons or things injury or damage. Where, however, a statute appears upon its face to confine or limit the operation of its provisions to particular persons or things, by enumerating such persons or things, and it is manifest that no reason exists or is apparent why other persons or things, not so enumerated, should not have been included within the benefits conferred or the burdens imposed by the statute, and it is obvious that, in the construction of such statute according to the maxim above referred to, injustice to a large class of persons will follow, we think that, in such cases, the just course, and one which cannot offend any canon of construction, is to give the act an interpretation according to its general spirit rather than to its letter, so as to reach a result harmonious with good sense and justice.

The case of *Triscony* v. *Brandenstein,* 66 Cal. 514, [6 Pac. 384], may be cited as bearing upon and in a measure sustaining the proposition above suggested. The court in that case had under consideration a statute, passed by the legislature of 1873-4 (Stats. 1873-4, p. 50), "to protect agriculture and to prevent the trespassing of animals upon private property in the counties of Fresno, Tulare, Kern, Ventura, Santa Barbara, San Luis Obispo and Monterey," which provided that the owner of the land upon which the animals of another were found trespassing could take the same up, and upon the failure of the owner of the animals, after having been given the required notice, to pay the taker-up the damages prescribed by the act, the latter was authorized to institute and maintain, either in the justice's court or the district court, according to the amount of damages claimed, an action based on the statute against the animals themselves, *in rem,* for the recovery of such damages. In the case just cited, the plaintiff brought an action in the district court against the owner of the animals found upon the former's

22 Cal. App.—34

land. To the complaint the defendant interposed a demurrer, the chief ground of which was that the action was not brought upon the statute, and that the plaintiff's only remedy was to proceed under said law against the cattle themselves and their owners. The court, reversing the judgment entered after demurrer sustained, held it to be true that the complaint was not framed with reference to the statute, nor was the action founded upon it, but declared that "the statute, which gives a .remedy by process *in. rem* against the cattle themselves, does not take away the remedy to recover damages from their owner for wrongs done by them where they were not distrained *damage feasant,*" the complaint not having alleged that the cattle were taken *damage feasant.* The proposition suggested by the conclusion reached in that case which is important in connection with the point under consideration here is this: That the statute of 1873–4 provided a special or particular kind of remedy to the taker-up of the animals found upon his land for the recovery of the damages prescribed by the act, and, upon the rule of construction which the defendants in the case at bar invoke and insist upon applying to the statute of 1907, it could, with equal reason, be held that the legislature, by said act of 1873–4, intended to confine or limit the taker-up to the remedy so provided; but the supreme court did not take that view but recognized the right of the owner of the land to proceed, *in personam,* against the owner of the animals for the damage done.

Now, there can be conceived no sound or substantial reason why the legislature should purposely or intentionally have taken from the counties to which the statute of 1877–8 was made exclusively applicable the right to the protection against trespasses afforded by the operation therein of the full force of the common-law rule. A sufficient reason, it must be assumed, prompted the legislation of 1877–8 which had the effect of reviving in those counties the force of the common-law rule, after the long period prior thereto during which it appeared to have been the legislative judgment that said rule should not so operate or have force. We find, in the case of *Hahn* v. *Garratt,* 69 Cal. 146, [10 Pac. 329] some pertinent expressions upon this matter. It was there said: "When the common law was adopted in 1850, it was made

the rule of decision in all the courts of this state, so far as it was not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state. At that time the principal industries of the state were mining and cattle raising. To encourage and promote these industries, acts were passed by the legislature, before the adoption of the common-law, which have been held to be inconsistent with some of its rules, and among others, with that above referred to. Since then, farming and fruit raising have become important industries, and to encourage and protect them, special acts have been passed for some of the counties, which in effect restored the rules of the common law."

The foregoing language was used in considering the effect of the amendments made to the estray law of 1863, which applied exclusively to Santa Clara County, by the legislature of 1871–2, and is explanatory of the motive of the legislature in modifying from time to time the legislation which was repugnant to the common-law rule respecting trespassing domestic animals. Necessarily, as conditions changed so that, instead of the stock-raising business being the paramount industry of California, agricultural and horticultural interests grew to be important factors in the promotion of the material prosperity of the state, the legislative policy with regard to trespassing animals was changed accordingly, and various special acts, or statutes applying to certain counties only, were enacted to meet the exigencies of the new conditions brought about by the introduction of those industries. Thus it was, we must assume, that the legislature was actuated in the passage of the statute of 1877–8, which, as seen, restored to Colusa and the few other counties to which that act was made to exclusively apply the rule of the common-law that every man must so take care of and control his domestic animals as to prevent them from trespassing upon and damaging the close of another, no matter whether the same was or was not protected by an inclosure. We think we are authorized to assume that the conditions which called for the enactment of the statute of 1877–8 are now no different in the counties to which said statute was made applicable from what they were at the time of the passage of the act. Indeed, that the horticultural and agricultural interests of those counties and, for that matter, of the whole state have been

greatly developed since the enactment of the statute of 1877–8 and have become the chief industries in California, is a matter of such common knowledge that the courts may well be justified in taking judicial notice of the fact. Since, therefore, no reason is conceivable for changing the rule as to the counties in which, by virtue of the act of 1877–8, the common-law rule prevailed—since, indeed, the necessity for the operation of the full sway of said rule all through California is now, and was, at the time of the passage of the act of 1907, much greater even than when the rule was restored to the counties affected by the act of 1877–8—the conclusion is forced upon us that the legislature, by the act of 1907, did not intend to interfere with the operation in its entirety of said rule in the counties referred to, or, in other words, did not intend to limit the application of said rule in those counties to the particular cases mentioned in said statute. This conclusion is reinforced by a consideration of the universally recognized principle that no one is permitted to so use his property as to injure or destroy that of others, and that it must be assumed that the legislature, in the exercise if its functions, will always keep that principle in view and intentionally pass no laws repugnant thereto. (See *Tricony* v. *Brandenstein,* 66 Cal. 514, 515, [6 Pac. 384].) And, if the legislature did not intend, by the act of 1907, to destroy the force of the statute of 1877–8, then clearly the doctrine of *expressio unius est exclusio alterius* cannot and should not be invoked and applied in the construction of the statute of 1907.

But, if the foregoing view of the effect of the act of 1907 be correct, the question naturally suggesting itself is: Why did the legislature so frame said statute? Why did it appear thus to limit the right to maintain actions for trespass upon lands to lands surrounded by the conditions specified in the act? Counsel for the plaintiffs declare that, by the act, the legislature, without intending to interfere with the operation of the common-law rule in those counties in which, by the authority of special statutes, it prevailed when the act of 1907 was passed, merely designed to provide a "summary or extraordinary remedy" in the cases mentioned therein. But the remedy thus provided is neither summary nor extraordinary. It is the plain, ordinary remedy for the recovery of damages for trespass upon lands planted to growing crops,

etc., and inclosed by a fence or other substantial inclosure. Our view of the proposition is, however, that the legislature of 1907 fully recognized the fact that certain counties had properly been given and were then justly enjoying the full protection of the common-law rule by virtue of special statutes, newly developed conditions having imperatively demanded the protection afforded by said rule, and that, by the passage of said act of 1907, the purpose was to provide for those counties not affected by the special statutes referred to a remedy for trespasses which, in its scope, should be limited according to the requirements of existing conditions in those counties, and that there was no intention thus to disturb the force or nullify the effect of the earlier acts affecting other counties.

But, after all, there is no repugnancy or inconsistency between the common-law rule and the statute of 1907. Indeed, the rule promulgated by said act is itself the common-law rule. It is true that it limits the application of said rule to certain special cases, but this cannot create a repugnance or inconsistency between the rule as it is proposed to be used by the statute and the rule as it is declared in the common law. The repugnancy which must exist between our constitutions or local laws and the rule at common law, in contemplation of section 4468 of the Political Code, must be such that it is impossible that the two can exist and operate at the same time without infringing upon the province of each other. The two must, in other words, be directly opposed to each other, and this cannot be said to be true in the case here.

2. The facts disclosed by the evidence justified the granting of the injunction.

The defendants kept their cattle upon their lands situated near the lands of the plaintiffs. Much of the lands of the defendants, like those of the plaintiffs, was uninclosed. These cattle were never herded, were allowed to roam at will, and the result was that they repeatedly wandered upon the lands of the plaintiffs and were frequently taken up by the latter under the estray law. The defendants were always notified when their cattle were thus taken up, *damage feasant,* but never seemed to have taken any steps to prevent their further trespassing upon the lands of the plaintiffs. As the complaint alleges, so the evidence shows, that the plaintiffs were

engaged in raising sheep on a large scale, and required and used the lands which were trespassed upon by the defendants' cattle for that purpose. The testimony shows that these cattle would almost daily, in large numbers—sometimes as many as four or five hundred a day— enter upon the lands of the plaintiff's and would trample upon the land, consume the herbage thereon and thus deprive the sheep of the food necessary for their proper sustenance and development; that the sheep were thus annoyed and greatly interfered with, particularly the ewes during the lambing season. The defendants were notified to prevent their cattle from entering upon the lands of the plaintiffs, but paid no heed to the notification, and the plaintiffs were finally required to hire a number of men for the purpose of preventing said cattle from entering upon said lands, but even under those circumstances it was impossible to stop such trespasses entirely.

Thus we have here a case where the injunctive jurisdiction of a court of equity may justly be invoked upon two distinct grounds, viz.: 1. Irreparable injury, because the property destroyed (the herbage or feed) cannot be replaced so as to accomplish the immediate purpose for which it was being used, to wit, the feeding of the sheep; 2. Repeated acts of trespass necessitating a multiplicity of actions at law for damages. "The principle determining the (equity) jurisdiction embraces two classes of cases," says Professor Pomeroy, in his work on Equity Jurisprudence, section 1357, "and may be corectly formulated as follows: 1. If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable—that is, if the injury done or threatened is of such a nature that, when accomplished, the property cannot be restored to its original condition, or cannot be replaced, by means of compensation in money—then the wrong will be prevented or stopped by injunction. 2. If the trespass is continuous in its nature, *if repeated acts of wrong are done or threatened,* although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy." (See *Daubenspeck* v. *Grear,* 18 Cal.

447; *Kellogg* v. *King,* 114 Cal. 378, [55 Am. St. Rep. 74, 46 Pac. 166] ; *Mendelson* v. *McCabe,* 144 Cal. 233, [103 Am. St. Rep. 78, 77 Pac. 915] ; *Danielson* v. *Sytes,* 157 Cal. 686, [28 L. R. A. (N. S.) 1024, 109 Pac. 87] ; *Sailors' Union etc.* v. *Hammond L. Co.,* 156 Fed. 454, [85 C. C. A. 16] ; *Northern Pac. Ry. Co.* v. *Cunningham,* 103 Fed. 708.)

For the reasons herein stated the judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1913.