**In re GLOBE DRUG CO., Inc.**

**SEARS v. STELZNER et al.**

**KLIPSTEIN v. SEARS.**

No. 8994.

Circuit Court of Appeals, Ninth Circuit.

May 29, 1939.

Homer Johnstone and Sidney H. Wyse, both of Los Angeles, Cal., for appellant.

Arthur L. Shannon and Clarence A. Shuey, both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

A decree granted judgment against appellant and another, in a suit brought by appellee as trustee in bankruptcy to recover for an alleged withdrawal of funds belonging to the bankrupt corporation by the appellant and another, and appellant brought this appeal.

Klipstein, the appellant, is a brother-in-law of one Stelzner, and was engaged in the "title business". Stelzner and two other men on July 17, 1920, caused to be incorporated under the laws of California the "Globe Drug Company, Inc." hereinafter referred to as the bankrupt, with 25,000 shares of capital stock of the par value of $1 per share.

The record is very sketchy about certain details, but apparently the corporation had thereafter engaged in the retail drug business, had only three stockholders, including Stelzner, and sometime prior to December 21, 1927, an agreement was made between Stelzner and the other two stockholders, whereby Stelzner agreed to purchase from them their stock in the bankrupt.

On December 21, 1927, a certificate for ten shares of the bankrupt's stock was is-

sued in appellant's name. On December 31, 1927, the bankrupt's stockholders elected appellant, Stelzner and Dorothy Stelzner to be "directors of the corporation for the ensuing year", and on the same day, such directors, in a meeting at which appellant was "present and acting", elected appellant to the office of vice-president of the bankrupt.

On January 3, 1928, Stelzner borrowed $17,000 from a bank, and delivered his promissory note for that amount. Appellant was liable to the bank on the note, either as joint maker, endorser or guarantor, as an accommodation to Stelzner. On the following day, in a meeting of bankrupt's directors, at which appellant was "present and acting", appellant was elected Secretary of the bankrupt, and as such attested the minutes of that meeting.

Stelzner paid the $17,000, which he borrowed, to the other two stockholders of the bankrupt, and on January 5, 1928, a certificate for 9,990 shares of the bankrupt's stock was issued in appellant's name, and delivered to him, apparently to secure him against his liability on the note. There is no evidence that there were any meetings of the stockholders or directors of the bankrupt from January 23, 1928, until October 19, 1935. During those dates, Stelzner made payments of principal on the debt owing the bank in the sum of $11,700, and $4,963.99 interest. All these payments were made with money belonging to the bankrupt. In addition to those payments, appellant in 1934 paid $500 to the bank, which was applied on the principal of the debt. Between January 23, 1928, and October 19, 1935, there were 34 payments on the principal of the debt, and 40 payments of interest thereon. On the date of each of those payments, the bankrupt owed a creditor an amount in excess of each payment. The record does not disclose, however, that the bankrupt was insolvent at any time when these payments were made.

On October 19, 1935, there was a balance due the bank of $4,800, and the directors of the bankrupt held a meeting and adopted a resolution authorizing the bankrupt to borrow $5,000 from the bank which held Stelzner's note. At this meeting, appellant was present and acting, and attested the minutes as secretary of the bankrupt. On the same day, a note was executed by the bankrupt to the bank for $4,800, which was signed by appellant as the bankrupt's secretary, and individually as joint maker, endorser or guarantor. The bankrupt's note was delivered to the bank in payment of Stelzner's note. Appellant thereupon purchased the bankrupt's note for $4,800 with one made by him personally, and thereafter paid the latter. He acquired the bankrupt's note on October 19, 1935, and on that day commenced an action against the bankrupt and Stelzner to recover on such note and the $500 paid by him in 1934 on the Stelzner note. He recovered a judgment by default on November 8, 1935 for $5,383.82 and costs in the amount of $177.

Thereafter, and prior to March 6, 1936, execution was issued on the judgment, and the bankrupt's stock was sold to a third person. The proceeds of the sale were held by appellant or his attorney for the benefit of the bankrupt's creditors.

The bankrupt received nothing for the payments made by it on the Stelzner note, or for its note to the bank. The Corporation Commissioner of California at no time authorized issue by the bankrupt of its stock.

The bankrupt was adjudicated as such on March 6, 1936, and appellee was appointed trustee of its estate on April 18, 1936. Thereafter appellee brought this suit against appellant and Stelzner, containing two causes of action, in the first of which it was alleged that the payments made by the bankrupt on the debt of Stelzner, were made "with the purpose and intent * * * of hindering, delaying, and defrauding" the bankrupt's creditors. It was alleged in the second cause of action that the sum of $5,132.71 was paid to the bank and applied on the Stelzner note out of the bankrupt's assets, which during that time had no surplus or net profits; that such withdrawals were not authorized by the Corporation Commissioner of California; and that, therefore, the withdrawal of the funds was in violation of Cal.Civil Code § 363 and of § 309 as it existed prior to the adoption of § 363. Appellee prayed for a decree "for such sums of money" found to be so withdrawn.

The court found the facts as above stated except in particulars as follows: that the bankrupt was insolvent "for a period of at least three years prior to the date of its adjudication"; that the payments made on the Stelzner note by the bankrupt during the three years were made "with the purpose and intent * * * of hinder-

ing, delaying, and defrauding" the bankrupt's creditors; and "That the payments made out of said corporation's funds as aforesaid, were authorized and consented to by the defendants while acting as officers and directors of said corporation, and while they were stockholders thereof; that said payments were made without the vote or written consent of any of the shares of said corporation other than the shares held by the defendants; that no permit of the Commissioner of Corporations of the State of California was ever applied for or issued authorizing such payments."

On December 29, 1937, a decree was entered granting appellee judgment for $4,-500, and provided that after payment of the $4,500 a report should be filed by the Referee in Bankruptcy showing the exact amount required to pay all claims against the estate and administration expenses, and appellee "shall thereupon have and recover * * * the amount, if any, shown by such report to be necessary to satisfy" such claims and expenses; and that if the report disclosed that $4,500 was more than was required to pay such claims and expenses, then the excess was to be paid to appellant and Stelzner. On April 2, 1938, the court below inserted a provision in the decree limiting the amount of the judgment in any event to $4,500 and interest. This appeal, in which Stelzner did not join, after proper severance, then followed.

California Civil Code, § 3439, provides: "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Civil Code, § 3442, provides in part: "In all cases arising * * * under the provisions of this title * * * the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it is not made for a valuable consideration; provided, however, that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors."

We recently construed the California law as set forth in these statutes. The intent of a debtor, here the bankrupt, to hinder, delay or defraud his creditors, must be shown, except in the case where the debtor, while insolvent, makes a conveyance without a valuable consideration, in which event, a fraudulent intent is conclusively presumed. Union Central Life Ins. Co. v. Flicker, 9 Cir., 101 F.2d 857, 860. Here, the finding that the payments were made with the intent to hinder, delay or defraud the creditors cannot be sustained. There was no evidence of such an actual intent, and although it was admitted that the payments were made without consideration, there was no evidence that the bankrupt was insolvent when such payments were made. The finding to the contrary, cannot, therefore, be sustained.

Appellee maintains that the directors of a corporation are responsible for misappropriation of the corporate assets, and that appellant is liable under that rule. Appellant does not controvert liability under that rule, if (1) he was a director when the payments were made; and (2) the rule as stated has not been modified and superseded by statute.

At the time of appellant's election as a director, the stock issued to him was void, because issued without the consent of the Corporation Commissioner, and appellant argues that since to be a director, one must be a stockholder (6 Cal.Jur. 1040, § 416), he cannot be considered as having been a director. While his stock may be void, in which event the director is not one de jure, that fact does not prevent his being a de facto director. O'Dea v. Hollywood Cemetery Assoc., 154 Cal. 53, 69, 97 P. 1; McKeehan v. Pacific Finance Corp., 120 Cal.App. 578, 585, 8 P.2d 213; 6 Cal. Jur. 1047, § 424.

In 6a Cal.Jur. 1068, § 594, it is said: "Persons who hold office as directors, or other officers, with the consent of the corporation, and under color of an election or appointment, are de facto officers, although their election or appointment may have been illegal * * *" Here, there was color of an election; appellant assumed his duties, and did act; he did not renounce his election; and there was no proof that he did not hold his office. We think he was a de facto director, and may not assume the office, and at the same time shed his duties and liabilities. Accordingly, he is estopped to assert that he was not

a director. Consumers Salt Co. v. Riggins, 208 Cal. 537, 540, 282 P. 954; 6 Cal.Jur. 1049, 1050, §§ 426, 427.

Appellant carefully traces the statutory enactments regarding director's liability in California. He admits that the statutes prior to Civil Code, § 363, did not cover all the liability of a director, but that some liability sprang from the common law, but he contends that the revision of the corporation laws in 1931 as amended in 1933 was intended to limit all liability of directors, in such cases as this, to the cases, and in the circumstances provided in Civil Code, § 363. The legislative history discloses some basis for that contention, but we believe it is unnecessary to decide that question. Compare: Civ.Code, § 280; 23 Cal.Jur. 790, § 168; Political Code, § 4468; Blevins v. Mullally, 22 Cal.App. 519, 533, 135 P. 307.

Civil Code, § 366, provides in part:

"No corporation * * * shall make any loan of money or property to or guarantee the obligation of (a) any director or officer of any such corporations, directly or indirectly * * * provided that any such loan or guaranty may be made by the vote or written consent of the holders of two-thirds of the shares of all classes * * * other than the shares held by the benefited director, officer or shareholder.

"If any such loan or guaranty be made without such vote or written consent of the shareholders, the directors, officer or officers of any such corporation who authorize it or assent thereto shall be jointly and severally liable to the corporation as guarantors for the repayment or return of the sum or value so loaned with interest thereon at the rate of six per cent per annum until paid, or for any liability upon such guaranty."

We think it is clear here that by execution of its note to the bank, the bankrupt made a loan to appellant and Stelzner, or guaranteed their obligation "directly or indirectly". Appellant and Stelzner both authorized the transaction. Bankrupt incurred liability, as shown by the judgment against it in appellant's favor, and therefore he was liable jointly and severally under the statute.

Therefore, if the revision of the corporation laws did supersede the common law as contended, then liability is fixed by § 366. In this connection, appellant says: "Nor does appellant contend that appellee is limited by the express mention of section 363 in his pleading. Of course this Court could grant any relief warranted by the facts alleged regardless of the pleading of legal conclusions."

Appellant further contends that there is no showing that any of the creditors had proved their claims in the bankruptcy proceeding, so that it does not appear that any recovery is necessary. That contention is immaterial here. This is a suit to enforce a right of the corporation by the trustee against the director for his illegal acts. Whether the stockholders of the bankrupt or its creditors will benefit by recovery is of no moment here. The right enforced exists whether there are creditors or not.

Finally, the form of the decree is challenged, but it, in substance, follows the form of decree approved in Re Wright Motor Co., 9 Cir., 299 F. 106, 110. The decree is quite definite, in that it limits recovery in any event to $4,500. The fact that a provision permits payment of the excess over the claims and expenses to appellant is favorable to appellant, and we assume he has no objection thereto. It is merely said that the decree "summarily deprives" appellant of his opportunity to appear and challenge claims in the bankruptcy proceeding, so that he has no opportunity "to litigate the extent of his liability". However, the extent of his liability is dependent upon his acts, not on the amount of claims. He is merely given the benefit of an exoneration of his liability in excess of the claims and expenses. We see no error in the form of decree.

Affirmed.