[Civ. No. 4890. Second Appellate District, Division Two.—February 24, 1928.]

JOHN HARLOW, Respondent, v. MILTON FEDER, Appellant.

W. I. Gilbert for Appellant.

E. E. Kirk and Wally A. Kirk for Respondent.

STEPHENS, J., *pro tem.*—This cause relates to certain alleged violations of a contract which we here recite in full:
"Agreement.

"Made and entered this 7th day of November, 1922, by and between John Harlow, of Ocean Park, county of Los

Angeles, state of California, hereinafter called the 'first party,' and Milton Feder, of Los Angeles, county of Los Angeles, state of California, hereinafter called the 'second party,' witnesseth:

"Whereas the first party is the inventor of improvements in apparatus for making moving portraits, for which he has applied for U. S. letters patent, Ser. 424,404, filed November 16, 1920, and

"Whereas, both parties are desirous of exploiting said invention and placing the same on the market.

"Now, therefore, in consideration of the mutual covenants hereinafter expressed, they agree as follows:

"The second party agrees to secure a location in Los Angeles, California, and engage the first party at a salary of two hundred dollars ($200.00) per month, for a term of three (3) months, and furthermore agrees to have manufactured apparatus containing said invention within the next six (6) months to a number of not less than twenty-five (25).

"The first party agrees to serve as demonstrator and instructor to purchasers and prospective purchasers how to operate said machines.

"The second party agrees to pay to the first party ten per cent (10%) of the retail selling price of said machines up to the amount of ten thousand dollars ($10,000), and as soon as the ten thousand dollars ($10,000) are paid to the first party, the first party agrees to execute a legal assignment conveying the entire right, title and interest in and to said invention, and the patent to be obtained therefor, to the second party, provided, however, that the said ten thousand dollars ($10,000) be paid to the first party within six (6) months as hereinafter provided.

"The first party also agrees to furnish to the second party all blue-prints, models, drawings, etc., that may be helpful in the manufacture of said machines and also to furnish said location with all his equipment now in his Ocean Park studio.

"It is distinctly understood that the second party has the option to revoke this contract at any time, provided, however, that he pay to the first party a salary of two hundred dollars ($200.00) per month for three (3) months and at

the time of the cancellation of this contract he turn over to the first party any and all machines, and parts thereof, that may be in the process of manufacture at the time of the cancellation of this contract, and the first party is to have these machines, and parts thereof, so turned over, without cost.

"In case the second party pays to the first party the ten thousand dollars ($10,000) above referred to, he shall have the option to engage the services of the first party for the term of another year at three hundred dollars ($300.00) per month, and the first party agrees to act as demonstrator as above set forth for said term, and furthermore, the first party agrees in the event that the ten thousand dollars ($10,000) is paid as above set forth, he will not engage in making portraits or pictures, or engage in similar work and demonstrating similar apparatus, throughout the United States and its territories, for the space of ten (10) years from the date hereof.

"It is understood by the parties hereto that the first party's salary of two hundred dollars ($200.00) per month shall not start until said location is secured, but not later than January 1, 1923, and the six months within which the ten thousand dollars ($10,000) are to be paid, are to be computed from the date at which the salary starts.

"The first party further agrees to execute all necessary papers, documents and assignments for foreign patents, that the second party may desire to apply for, and assign them to the second party, the second party agreeing to pay all the costs therefor, and the second party agrees to pay to the first party one thousand dollars ($1000.00) in addition to the amount mentioned above, when the last foreign patent is issued.

"Signed at Los Angeles, California, this 7th day of November, 1922.

"JOHN HARLOW.
"MILTON FEDER.

"In case the second party revokes this contract as provided hereinbefore, he agrees not to engage in making moving portraits or pictures or engage in similar work, and demonstrating similar apparatus throughout the United

States and its territories, for the space of ten years from the date hereof.

"JOHN HARLOW.
"MILTON FEDER."

The trial court caused an interlocutory and a final judgment to be entered which restrains and enjoins defendant, appellant herein, his agents, employees, partners, or servants from acting under the name of the defendant or in the name of the Animated Photofilm System—a name assumed by defendant and his associates—and from making, using, and operating certain apparatus, machines, and parts thereof, and from selling or otherwise disposing of the same; orders an accounting and decree that appellant holds all funds shown by such accounting as trustee in behalf of respondent; allows damages in the sum of $600 occasioned by reason of the alleged breach of the contract; decrees that plaintiff have and recover of and from the defendant the sum of $300 per month, or $10 per day for each day defendant remains in possession of the machines and apparatus described in the complaint; determined the value of three machines alleged to have been delivered to J. H. Hunt under the terms of a contract between appellant and Hunt as of the value of $200 each; fixes the reasonable value of the territorial rights sold by defendant to Hunt in the sum of $5,000, and damages in the sum of $1,020; orders the return of certain personal property, and requires appellant to deliver to respondent all sums received from certain contracts entered into between defendant and third parties, amounting to a total sum of $550; that respondent have and recover of and from appellant the sum of $2,122.50 received by appellant as trustee for respondent from the sales of machines, etc., and that appellant deliver to respondent said personal property or in lieu thereof to have and recover of and from appellant the sum of $1,835.30 and costs.

Appellant attacks the judgment, first, upon the ground that the respondent, plaintiff below, "has a plain, speedy and adequate remedy at law: first, an action for money had and received; second, an action for damages, and third, in an action for claim and delivery." But the complaint alleges and the court finds that as a result of appellant's breach of the contract respondent has suffered substantial injury in a number of different ways, the redress

of which would require several actions. This alone is justification for the issuance of the restraining decree. (Subd. 6, sec. 526, Code Civ. Proc.) ■ The complaint in effect alleges that appellant failed to conform to the requirements of the contract, but this notwithstanding, he was proceeding to use and dispose of the apparatus and the ideas received from respondent as his own. The findings are that this allegation is true, and there is ample testimony supporting such findings. Considering the nature of the apparatus and ideas in question, it is apparent, and so elementary that no authorities need be cited, that there was an irreparable injury. The action is more than an action in damages based upon a contract. It is to prevent further wrongful use of property and information which was the subject of a contract and might well be far greater than accrued damages.

■ Appellant seeks a reversal on the further ground that insolvency of appellant is not pleaded nor proved. We quote from the case of *Kellogg* v. *King*, 114 Cal. 385 [55 Am. St. Rep. 74, 46 Pac. 168] : "It is well settled that the remedy by injunction may be invoked to restrain acts or threatened acts of trespass in any instance where such acts are or may be an irreparable damage to the particular species of property involved. And in such case the question of the solvency or insolvency of the wrongdoer is an immaterial factor. It is the nature of the injury, and not the incapacity of the party to respond in damages, which determines the right. Where the effect of the act complained of is or may be to largely impair or destroy the substance of the estate, by taking from it something which cannot be replaced, it may be enjoined, irrespective of the ability of the defendant to respond in damages."

Appellant contends that the injunction is sought and granted, as he puts it in his brief, "upon the question of an inventor being entitled to an injunction before he has received a patent upon his product"; but we think a reading of the contract with the injunctive relief prayed for in the complaint and granted by the trial court justifies respondent's statement in his brief that "respondent's injunction is asked to prevent defendant from unlawfully exploiting the rights he secured from plaintiff [respondent] under the contract, and has nothing to do with infringement."

We do not agree with appellant in his claim that the allegations of the complaint show exact figures and do not support a prayer for accounting. While there are not extensive accounts involved, the complaint does allege unliquidated financial transactions, and, taken in consideration with the cause of action as a whole, justify the prayer for this relief.

A motion for nonsuit was made by appellant in the trial court and was denied. Appellant assigns this ruling as error. The foregoing effectively answers this claim as being without merit.

Appellant complains of exhibit No. 17, but this exhibit was introduced with consent of counsel for appellant and we cannot speculate upon the use made of it by the court, if any.

Appellant was asked on cross-examination about a conversation as to whether or not plaintiff would accept installment payments on the $10,000 mentioned in the contract. Counsel for appellant objected on the ground that the question was incompetent, irrelevant and immaterial. We are inclined to agree that the objection should have been sustained on the ground of immateriality, but the answer as given sheds no light on any issue in the case and could not have prejudiced anyone.

As to appellant's exception No. 34, while the objection to appellant's counsel's question was sustained, the witness proceeded to and did answer elaborately.

Exceptions 29, 30, 31, and 33: The questions related mainly to what the contract was between the parties. The contract was in writing, and the court properly sustained the objections made.

There are numerous claims on behalf of appellant as to the insufficiency of the evidence to support the findings. Suffice it to say that there is competent evidence tending to support each and every finding made.

Appellant assigns several rulings of the trial court as error. We have examined them all and find no error.

Judgment affirmed.

Craig, Acting P. J., and Thompson, J., concurred.