SAILORS' UNION OF THE PACIFIC et al. v. HAMMOND LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1907.)

No. 1,400.

1. INJUNCTION—TEMPORARY RESTRAINING ORDER—VALIDITY OF BOND.

The validity of a bond given by a complainant in compliance with the requirements of a temporary restraining order is not affected by the fact that it was dated prior to the order, where the sureties justified, and the bond was filed after the order was made; the date being no essential part of the instrument.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 328.]

2. SAME—GROUNDS—INTERFERENCE WITH RIGHT TO EMPLOY MEN.

Any attempt by force, violence, or coercion to compel an individual firm or corporation to refrain from employing men or to prevent any man or men from working for another, is an unlawful interference with a property right, and may under well-established equitable principles be restrained by injunction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 175.]

3. SAME.

A court properly granted a restraining order and temporary injunction to restrain defendants, which were certain labor unions whose members were sailors and marine firemen, from interfering with the business of complainant, where it was shown by the bill and affidavits that defendants conspired to prevent complainant from operating vessels owned by it during a strike, and that in pursuance of such conspiracy members of defendant unions picketed the wharves, and also by means of launches boarded complainant's vessels, committed assaults upon the crews, threatened the officers, and terrorized passengers, to whom they used profane, insulting and obscene language.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 305, 306.]

4. SAME—PROPERTY RIGHTS.

An owner of a vessel has a property right not only in the vessel itself, but in its use and the business in which it is employed, which may be protected by injunction restraining unlawful interference with employés engaged in operating the vessel and conducting such business.

5. SAME—CONSTRUCTION.

The terms of a restraining order or temporary injunction are to be construed in the light of the allegations and prayer of the bill on which it was granted.

6. SAME—GROUNDS—REMEDY AT LAW.

Ground is presented for injunctive relief whenever there is an actual and threatened injury to property, coupled with allegations of facts bringing the case within one of the recognized grounds of equitable jurisdiction, and showing that there is no plain, adequate, or complete remedy at law, and such relief may be invoked as a remedy for injury to, or destruction

of, one's business, if no action at law would afford as complete, prompt, and efficient a remedy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 9, 10.]

Appeal from the Circuit Court of the United States for the Northern District of California.

See 149 Fed. 577.

"The appeal in this case is from an interlocutory order granting an injunction pendente lite. The appellee brought a bill in equity, in which it alleged that it is a New Jersey corporation engaged in the lumber business and in carrying passengers and freight to and from various ports in California, using for that purpose three sea-going vessels; that in June, 1906, the appellants conspired and threatened to prevent, and to continue to prevent, the appellee's vessels from leaving the port of San Francisco with crews of its watchmen and guards, and, in pursuance of such conspiracy, they endeavored forcibly to remove one of the appellee's employés, and pinioned and imprisoned another of its employés, and committed many other acts of violence and unlawful interference with the business of the appellee; that the acts and doings of the appellants have become widely known, and the appellants threaten to repeat and continue such acts and prevent the vessels of the appellee from leaving the port, and from carrying passengers, and to interfere with and prevent the appellee from continuing its business; that such acts do interfere with the business of the appellee and its vessels, and if they are permitted to continue, the appellee will suffer irreparable damage, in that crews cannot be secured to man its vessels, nor can freight be secured to load its vessels; that the appellants are insolvent and without money or property sufficient to pay the damage sustained; that the appellee has already suffered through the acts complained of, in a sum exceeding $10,000; that an attempt to recover damages at law would require a multiplicity of suits; that, unless the acts of the appellants are restrained, the business of the appellee and its vessels will be totally destroyed; and that the appellee has no adequate remedy at law. The bill was supported by numerous affidavits showing that on or about June 1, 1906, the Sailors' Union of the Pacific demanded of the San Francisco shipowners a wage increase of $5 per month in all steam schooners, which was refused; that thereupon the unions struck; that the appellants created an executive committee known as the "Strike Committee," composed of seven members of the Sailors' Union of the Pacific, two members of the Pacific Coast Marine Firemen's Union, and two members of the Marine Cooks' and Stewards' Association; that between 50 and 60 vessels were involved in the strike; that the said committee bought a launch and hired another, both launches being manned by members of the three unions and used as picket boats; and that the water front was also picketed by strikers. The affidavits showed specific acts of violence committed by the unions on the dates of June 5th, June 17th, June 27th, June 30th, July 3d, July 4th, and July 11th; that at these various dates men on the launches forcibly boarded vessels in the harbor, made threats of bodily injury to the officers in charge, terrorized passengers, to whom they used profane, insulting, and obscene language, committed brutal assaults upon crews, firemen, cooks, and stewards, and committed other acts, showing that they were in the active prosecution of an unlawful plan to interfere with, harrass, annoy, and prevent the operation of the vessels and destroy the business and property of every nonunion shipowner in the port of San Francisco, for the purpose of coercing them into yielding to their demands.

W. H. Hutton, for appellants.

Henry Ach, J. W. Dorsey, and Chas. Page, for appellee.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the restraining order issued on July 13, 1906, was wrongfully issued, for the reason that no bond therefor was filed. The application for the restraining order was made on July 9, 1906, and a bond bearing that date had been prepared for that purpose. The court, instead of granting the order on that date, made an order to show cause on July 13th, and on that day granted a temporary restraining order, directed that the application for an injunction pendente lite be heard at a future date, and ordered that the temporary restraining order issue on the execution and filing by the appellee of a bond in the sum of $1,000 to be approved by the clerk. Immediately thereafter, and on July 13th, the sureties on the bond which bore the date of July 9th justified thereto before the clerk, and the clerk approved the bond and filed the same. Subsequently, on August 8, 1906, the court granted an injunction pendente lite upon the execution of a bond, and on the same day the requisite bond was filed by the appellee in compliance with the order of the court. The appeal is taken from the order of the court so made on August 8, 1906. The bond was valid, notwithstanding that its date was four days prior to the date when it was filed. The date of a bond is not an essential part of it. The instrument takes effect from the time of its filing. Williams v. McConico, 27 Ala. 572; Jenkins v. Hay, 28 Md. 547. Counsel for the appellants cites the decision of this court in Tyler Min. Co. v. Last Chance Min. Co., 90 Fed. 15, 32 C. C. A. 498, in which it was held that the liability of a surety cannot be extended by implication beyond the expressed terms of his contract. But in that case the bond had been given to procure a restraining order enjoining the defendants in the suit from working a certain portion of a mine and from removing or appropriating ore previously taken therefrom. A subsequent order was made, which continued such restraining order in force, but modified and changed it by permitting the working of the mine and the disposition of the ore taken therefrom under regulations prescribed by the court. It was held that the sureties could not be held liable for damages accruing to the defendants under the modified order. There is no such question in the present case. The sureties on the bond in this case justified thereon on the very day on which the order was made, and the bond was filed upon that date and approved by the clerk. It thereby became the bond upon which the order was granted, and it was from that date the valid obligation of the sureties.

It is contended that the issuance of the restraining order and the injunction were in excess of the court's jurisdiction, and that, although there are decisions of the Circuit and District Courts of the United States which sustain such jurisdiction, the use of the writ of injunction for the purposes sought in the bill in the present case has not been countenanced by any decision of the Supreme Court of the United States. The affidavits sufficiently show a combination of persons by concerted action to accomplish an unlawful purpose. It needs no citation of authorities to sustain the proposition that the appellee had the right to contract to employ labor and to carry on its business as it saw fit without interference from others, and that any attempt to com-

pel an individual, firm, or corporation to refrain from employing men or to prevent any man or men from working for another is an unlawful interference with a property right. That such interference may, under well-established equitable principles, be restrained by injunction, is abundantly sustained by the courts of this country and of England. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Arthur v. Oakes, 63 Fed. 310, 11 C. C. A. 209, 25 L. R. A. 414; Hagan v. Blindell, 56 Fed. 696, 6 C. C. A. 86; Jonas Glass Co. v. U. S., etc., Glassblowers' Ass'n, 64 N. J. Eq. 640, 54 Atl. 565; Vegelahn v. Guntner, 44 N. E. 1077, 167 Mass. 92, 35 L. R. A. 722, 57 Am. St. Rep. 443; Taff Vale Railway Co. v. Amalgamated Society of Railway Servants, App. Cas. Law Reports 1901, p. 426.

It is urged that the injunction was violative of the rights of the appellants; that the defendant unions and their members had the right to endeavor to improve their condition and to organize for that purpose, and had the right to communicate their desires to others, whether they were in the employment of the appellee or not, and to explain the differences that existed between their former employers and themselves; and that, if it became necessary to employ launches to carry out these purposes, they had the legal right to do so, as the waters of the bay of San Francisco are free to all. Conceding that the appellants had all of these rights, the argument ignores the salient facts brought to the attention of the court by the bill and the affidavits. It was not to prevent the exercise of any of such rights that the injunction was sought or obtained. Its purpose was to prevent acts of lawlessness, of violence, of insult, and of intimidation. No one can read the affidavits without arriving at the conclusion that members of the unions went far beyond the peaceful communication of their rights, their attitude toward their former employers, their purpose of self-protection, and the objects of their combination. It may be true, in the present case, as in many others of a similar character, that the disorders of the strike were deprecated by the officers and leaders of the unions, but that fact does not relieve the appellants of responsibility, nor render the court powerless to deal with them in their collective capacity for the violent acts which in the present case are shown to have been committed, and which, according to the affidavits, were threatened to be continued.

It is contended that the court erred in issuing the injunction for the reason that the appellee had no property right in that in which the court protected it, and it is argued that, while the appellee had a property right in its vessels, it had none in the labor of its employés, as the latter could leave its employment as they saw fit. To sustain that contention, Northern Pacific R. R. Co. v. Whalen, 149 U. S. 157, 13 Sup. Ct. 822, 37 L. Ed. 686, is cited. In that case the court held that the only ground on which, independently of an express statute, a court of equity could grant an injunction in a private action for nuisance, is special injury to property. The court said:

"No employer has such a property in his workmen, or in their services, that he can, under the ordinary jurisdiction of a court of chancery, maintain a suit as for a nuisance, against the keeper of a house at which they voluntarily buy intoxicating liquors, and thereby get so drunk as to be unfit for work."

This language of the opinion is especially relied upon, but the distinction between that case and the case at bar is elsewhere clearly stated in the opinion, where the court pointed to the fact that the defendants had not conspired or intended to injure the plaintiff's property or business, or to prevent the plaintiff's workmen from performing their contracts of service. The bill in the case at bar alleges, and the affidavits prove, that the appellants had conspired to injure and destroy the appellee's business and to prevent its workmen from performing their contracts of service. The appellee's property is not only its vessels, but the business of carrying freight and passengers, without which the vessels would lose their value. The right to operate vessels, and to conduct business is as much property as are the vessels themselves. All the rights which are incident to the use, enjoyment, and disposition of tangible things are property. "Property is everything that has an exchangeable value." Mr. Justice Swain, in The Slaughterhouse Cases, 16 Wall. 127, 21 L. Ed. 394. "Property may be destroyed, or its value may be annihilated. It is owned and kept for some useful purpose, and it has no value unless it can be used." In re Jacobs, 98 N. Y. 105, 50 Am. Rep. 636.

But it is said that the injunction goes further than the law permits, in that by its language it prohibits the appellants from doing that which they have the lawful right to do. By the order of the court the appellants are enjoined "from in any wise interfering with the crews, foremen, cooks, stewards, seamen, or either of them or any of the servants or employés of the said steam schooners or steamship or either or any of them, without due process of law; * * * from in any wise interfering with the business of the said steam schooners and said steamship except by due process of law, with the business of complainant or orator of and concerning the said steam schooners and the said steamship; * * * and from in any wise conspiring, colluding or confederating together for the purpose of preventing the said steam schooners and steamship from receiving and discharging freight and passengers." It is said that under this injunction the appellants would be in contempt if they asked one of their relatives not to go as a passenger on one of the appellee's steamers, ·or if they made complaint of the violation of navigation laws of the appellee's vessels, or if they exercised their right to discriminate against the appellee by shipping cargo on other vessels than those of the appellee. The language of the injunction, however, is to be interpreted in the light of the allegations and prayer of the bill, and these may make an otherwise indefinite order sufficiently specific. Hamilton v. State, 32 Md. 348. It is the acts set forth in the bill that the appellants are enjoined from doing.

It is urged that there is no showing that the alleged damage is irreparable, but that, on the contrary, the showing is that, if the appellee was suffering any damage for which the appellants were liable, it was easy of estimation, and could have been recovered in a single action against any of the appellants, who are abundantly able to respond in damages. It is true that the answer to the bill alleges that the appellants are not insolvent, and that they possess $150,000 in cash in bank. But it may be said, in general, that ground is presented for

injunctive relief whenever there is actual and threatened injury to property, coupled with facts bringing the case within one of the recognized grounds of equitable jurisdiction, and showing that there is no plain, adequate, or complete remedy at law.

Said the court, in Walla Walla City v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341:

"The remedy at law, in order to exclude a concurrent remedy at equity, must be as complete, as practical, and as efficient to the ends of justice and its prompt administration as the remedy in equity."

One ground of equitable jurisdiction in cases of continuing trespass is the fact that the measure of damages is exceedingly difficult of ascertainment. In such a case the solvency or insolvency of the wrongdoer is an immaterial fact. Kellogg v. King, 114 Cal. 378, 46 Pac. 166, 55 Am. St. Rep. 74. And relief by injunction may be invoked as a remedy for the destruction of one's business, if in such a case no action at law would afford as complete, prompt, and efficient a remedy. North v. Peters, 138 U. S. 271, 11 Sup. Ct. 346, 34 L. Ed. 936; Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580. It is made sufficiently clear by the allegations of the bill and the facts proven that, notwithstanding that the appellants may possess $150,000, the remedy at law is not as complete, prompt, and adequate as the remedy in equity. The remedy at law would involve a multitude of suits and delay, pending which the injury to the appellee's business might proceed to ultimate destruction. The question of withholding or granting the injunction was one which rested in the sound discretion of the Circuit Court. We find no ground for saying that there was abuse of that discretion.

The order is affirmed.