## KOLLEY et al. v. ROBINSON et al.

### (Circuit Court of Appeals, Eighth Circuit. April 11, 1911.)

### No. 3,469.

INJUNCTION (§ 101*)—LABOR STRIKE—ACTS OF VIOLENCE OR INTIMIDATION.

Union or other laborers have the right to quit the service of an employer when they choose to do so, and they may by peaceable methods persuade others to quit the service of an employer, but when they go beyond that, and attempt to induce laborers who have filled the places abandoned by them to quit work either by actual assaults or by threats, abusive language, or other means calculated to intimidate such workmen, they are without their rights and will be enjoined by a court of equity.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. § 101.*

Restraining boycotts, strikes, and other combinations by employés interfering with commerce or business, see note to Shine v. Fox Bros. Mfg. Co., 86 C. C. A. 313.]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by John C. Robinson and Roy H. Robinson, partners as J. C. Robinson & Son against Joseph F. Kolley and others. Decree for complainants, and defendants appeal. Affirmed.

Hiram N. Moore, for appellants.

Stanley D. Pearce (Manton Davis and Francis M. Curlee, on the brief), for appellees.

Before HOOK, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. This was a bill in equity brought by John C. Robinson and Roy H. Robinson, a copartnership doing business under the firm name and style of J. C. Robinson & Son, against Joseph F. Kolley, Cuthbert Childs, George Greeley, Joseph Lang, Henry Koch, Stephen Longley, Dan Kavanaugh, Ed Donnelly, and each and several of the officers and members of the Bricklayers' and Masons' International Unions of St. Louis, known as Unions Nos. 1, 2, 3, 19, and 22, said unions being unincorporated associations. Robinson & Son were citizens of the state of Illinois, and the defendants were all citizens of the state of Missouri. On the 15th of May, 1908, J. C. Robinson & Son entered into a contract with John J. Glennon, archbishop of St.

Louis, for the construction of a church building on the corner of Newstead avenue and Lindell boulevard, in the city of St. Louis, designated in the record as the St. Louis Cathedral. At the time the contract was entered into the scale of wages paid to bricklayers and masons was 65 cents an hour. On the 1st of June, 1909, the officers of the unions named in the bill demanded of Robinson & Son that they increase the wages of bricklayers from 65 to 70 cents an hour. This Robinson & Son refused to do, and thereupon a number of their employés quit work, and their places were filled by other men. The bill alleges that thereafter, and on the 9th of June, 1909, the defendants named in the bill and their associates, members of the defendant organizations, "did maliciously conspire, combine, and confederate with each other for the unlawful purpose of intimidating and coercing sundry persons with whom plaintiffs were contractually engaged in business, to wit, plaintiff's bricklayer employés, against their will and desire, to sever their contractual relations with plaintiffs, and to coerce them to refuse to furnish, under contract as aforesaid, their labor in the construction of said building." It is then alleged in substance that the associations appointed a strike committee of representatives of the associations in the conduct of the strike; that this committee was subject to the supervision, advice, and control of a joint executive committee appointed by all of the unions already mentioned, and were authorized and empowered to take such steps and do such acts as said committee should deem necessary in the enforcement of the demands of the said associations, to wit, the discharge or withdrawal of all nonunion bricklayers employed by Robinson & Son on the work, and the reinstatement of union bricklayers who had quit their places, and a wage of 70 cents per hour.

It is then alleged that Kolley and the other defendants named in the bill were appointed and designated on a committee to "picket" the cathedral; that the members of said committee for the unlawful purpose and design of intimidating and coercing plaintiffs' employés to leave the plaintiffs' employ against their will, and for the purpose of unlawfully coercing the plaintiffs to accede to the demands of the said union associations, did in person picket the building, and subject the plaintiffs and their employés continually to spy and surveillance: that these acts were accompanied with threats and other acts and circumstances of a threatening character intended and tending to, and they did in fact, intimidate plaintiffs' employés, bricklayers, and others in their employ; that daily at the hours for the beginning and ceasing of labor on said building the defendants named in the bill, some or all of them, congregated in numbers immediately in front of the plaintiffs' office at the building, or on the streets leading and adjacent to the building, and intercepted, jostled and physically restrained plaintiffs' employés against the latters' will; that the defendants followed the plaintiffs' workmen to the car line and to their homes, picketing the latter, to the terror of the families of the employés of the plaintiffs, and by looks, menace of appearance, and otherwise, tending greatly to intimidate and terrorize plaintiffs' employés; that in numerous instances bricklayers employed by the plaintiffs had been intercepted by the defendants, and subjected to abuse and villification, and threatened

with physical violence unless they withdrew from the plaintiffs' employ; that in other instances, a number of which are specifically set out in the bill, the plaintiffs' employés were assaulted with physical violence. The bill prayed for an injunction, enjoining the defendants from continuing the unlawful acts complained of. An answer and replication were filed, and the case was referred to a master to take the testimony. On the filing of the master's report containing the evidence, the court issued a temporary injunction, and by stipulation of the parties the case was set down for final hearing upon the evidence taken by the master, resulting in the decree complained of. The decree enjoins the defendants from congregating for the purpose of coercing or intimidating the employés of Robinson & Son, and from "picketing" and threatening in an intimidating manner, and from interfering with the plaintiffs' employés for the purpose of coercing or intimidating them.

We have examined this record with care, and think the allegations of the bill are fully sustained by the evidence. The authorities are all in harmony that union or other laborers have the right to quit the service of an employer when they choose to do so, and that they may, by peaceful methods, persuade others to quit the service of an employer. But the authorities are equally in harmony that when they go beyond that, and attempt to induce laborers who have filled the places abandoned by them to quit work, by threats, brutal assaults, and other methods of intimidation, such as the record shows were resorted to in this case, they are without their rights and may and will, upon proper application therefor, be enjoined from compassing their purpose by such unlawful methods.

The defendants, as shown by the testimony, seem to labor under the misapprehension that the only intimidation or coercion that will authorize an injunction consists of physical assaults on the person of those whom they desire to deter from taking employment, or compel to quit their employment. While this feature is present in this case, it is not necessary to authorize the interference of a court of equity. The very plan adopted here, excluding the instances of personal violence, was the most substantial exhibition of force. A body of men massed and controlled by a leader at places where they could be used for obstruction, if required, will deter the willing bricklayer, if he is a timid man, by knowledge upon his part of the fact that he is likely to be intercepted and subjected to abuse by these men in going to and from his place of employment, when he desired to go or had agreed to go, is intimidation quite as potent in some cases as actual physical assault. One man may be intimidated only when actually assaulted, whereas another, a peaceable law-abiding man, can well be intimidated by being called harsh names, by threats, and being followed or compelled to pass by men known to be unfriendly. The methods employed by the defendants in this case have been uniformly condemned by the courts. Union Pacific Railroad v. Ruef (C. C.) 120 Fed. 102; American Company v. Wire Drawers' Union (C. C.) 90 Fed. 608; Allis-Chalmers Co. v. Molders' Union (C. C.) 150 Fed. 155; Otis Steel Co. v. Local Union (C. C.) 110 Fed. 698; Southern Ry. Co. v. Mechanics'

Union (C. C.) 111 Fed. 49; Goldfield Consolidated Mining Company v. Goldfield Union (C. C.) 159 Fed. 500; Sailors' Union v. Hammond Co., 156 Fed. 450, 85 C. C. A. 16.

We have not deemed it necessary to discuss the assignments of error separately, for the reason that our examination of the record satisfies us that the injunction was properly granted, and the decree is therefore affirmed.