BEACON THEATRES, Inc., a corporation, Petitioner,

v.

The Hon. Harry C. WESTOVER, Judge of the United States District Court of the Southern District of California, Central Division, Respondent.

No. 15614.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1958.

Writ of Certiorari Granted May 19, 1958.

See 78 S.Ct. 996.

Weller & Corinblit, Los Angeles, Cal., for petitioner.

Frank R. Johnston, Los Angeles, Cal., for respondent.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

POPE, Circuit Judge.

This is an original application by Beacon Theatres, Inc., seeking a writ of mandamus directed to the respondent Judge requiring him to take action to vacate certain orders made by him which petitioner asserts will operate to deprive petitioner of its right to trial by jury of certain issues presented by the pleadings in a case still pending in the respondent's court.

The petition for the writ and the response disclose that the parties to the pending litigation, Fox West Coast Theatres Corporation, plaintiff, and Beacon Theatres, Inc., defendant, are owners of theatres in or near the City of San Bernardino, California. The plaintiff, here called Fox, a Delaware corporation, owns the "California Theatre". The defendant, here called Beacon, a California corporation, is owner or lessee of the "Bel-Air Drive-In Theatre" situated some 11 miles distant from Fox's theatre. On October 31, 1956, Fox filed in the respondent's court a complaint against Beacon which was entitled "Complaint for Declaratory Relief". The complaint alleged the requisite amount in controversy and both diversity of citizenship of the parties and that the controversy arose under the laws of the United States, (the Sherman and the Clayton Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq.). It stated that heretofore the plaintiff had received licenses from the major distributors of motion pictures in the United States, namely, Paramount Pictures, Inc., RKO Radio Pictures, Inc., Warner Brothers Pictures, Inc., Twentieth Century-Fox Film Corporation, Columbia Pictures Corporation, Universal Films Exchanges, Inc., Loew's Incorporated, and United Artists Corporation, whereby Fox had been given the right to first-run exhibi-

tion of motion pictures in the "San Bernardino competitive area", with reasonable periods of clearance or protection prior to subsequent run or exhibition in that area. Quoting: "That the right so [to] negotiate with the Distributors for first-run exhibition of motion pictures in said San Bernardino competitive area and to negotiate for a reasonable period of clearance or priority of run over subsequent exhibitions of the same motion picture in said area are and each of them is a valuable property right of plaintiff and of plaintiff's said California Theatre, the deprivation of which would result in substantial monetary damage and loss to plaintiff." It continues that defendant Beacon had recently constructed a drive-in theatre with a capacity for approximately 1000 automobiles; that the theatre was within the San Bernardino competitive area; and that the average driving time between plaintiff's and defendant's theatres was not more than 20 minutes; that the plaintiff's California Theatre was substantially competitive with defendant's Bel-Air Drive-In Theatre; that there were other theatres in that area substantially competitive with those of plaintiff and defendant and that in consequence any one theatre may validly be granted clearance over all the others within the purview of the opinion and findings of a Special Expediting Court in the case of United States v. Paramount Pictures, Inc., 85 F.Supp. 881, rendered in the United States District Court for the Southern District of New York and entered on February 8, 1950;[1] Paragraphs XI and XII are as follows:

"XI. An actual controversy relating to the legal rights and liabilities of plaintiff and defendant exists and arises out of the following facts: Defendant contends that its theatre is not in substantial competition with plaintiff's California Theatre, or with other theatres located in the San Bernardino competitive area, and that it is entitled to exhibit motion pictures distributed by the above named Distributors day and date, that is to say simultaneously, with their first-run exhibition in the San Bernardino competitive area, and that neither the plaintiff nor the other owners and operators of theatres within said area are entitled to negotiate with said Distributors for any clearance over defendant's Bel-Air Drive-In Theatre.

"Plaintiff contends that its California Theatre is substantially competitive with defendant's Bel-Air Drive-In Theatre on first-run in said area, and that the other said theatres in the San Bernardino area are each of them substantially competitive with each other, to an extent justifying the granting of clearance to one theatre over others within the purview of the opinion and findings of the Special Expediting Court in United States v. Paramount Pictures, Inc., above referred to, and that the granting of clearance by the Distributors would not

---

1. The complaint quotes the following definitions from the opinion in that case as follows: "Runs—The successive exhibition of a motion picture in a given area, first run being the first exhibition in that area, second run being the next subsequent and so on.

"Clearance—The period of time, usually stipulated in license contracts, which must elapse between runs of the same picture within a particular area or in specified theatres."

From the findings in that case the complaint quotes the following: "76. Either a license for successive dates, or one providing for clearance, permits the public

to see the picture in a later exhibiting theatre at lower than prior rates.

"77. A grant of clearance, when not accompanied by a fixing of minimum admission prices or not unduly extended as to area or duration affords a fair protection of the interest of the licensee in the run granted without unreasonably interfering with the interest of the public.

"78. Clearance, reasonable as to time and area, is essential in the distribution and exhibition of motion pictures. The practice is of proved utility in the motion picture industry and necessary for the reasonable conduct of the business."

be within the injunctive provisions against the granting of any clearance to theatres not in substantial competition within the meaning of the consent decrees and final decrees in said action above referred to.

"Plaintiff further contends that it has an equal right with the defendant to negotiate with each Distributor independently for a prior run for plaintiff's California Theatre ahead of any other theatre, including defendant's Bel-Air Drive-In Theatre, in said competitive area and that there is no obligation on the part of any Distributor in such a case to grant an equal and simultaneous run to defendant's said Bel-Air Drive-In Theatre.

"XII. The defendant, in addition to contending that its said Bel-Air Drive-In Theatre is not substantially competitive with any other theatre in the San Bernardino area on first-run exhibition in said area, has threatened plaintiff and has stated to plaintiff in substance and effect that it has threatened the Distributors above mentioned that if plaintiff's said California Theatre is granted any clearance over defendant's Bel-Air Drive-In Theatre, or is granted a prior run, said action on the part of plaintiff will be deemed by defendant to be an overt act in concert with any distributor who may grant plaintiff such clearance or such priority of run in restraint of trade and a violation of the Sherman Antitrust Act and of the decrees of the Special Expediting Court in United States v. Paramount Pictures, Inc., et al., and that plaintiff will be subjected to an action by said defendant for treble damages under Section 4 of the Clayton Act (Title 15 USC Section 15). That said threats and the duress and coercion upon the Distribu-

tors arising out of and resulting from said threats of litigation threaten to and have in fact deprived plaintiff and its said California Theatre of the right to negotiate for motion pictures upon their first-run in the San Bernardino area and to negotiate for clearance over theatres in competition with plaintiff's said theatre upon said first-run, including defendant's Bel-Air Drive-In Theatre. That plaintiff is without any speedy or adequate remedy at law and will be irreparably harmed unless defendant and its officers, agents and employees, are restrained and enjoined from instituting any action under the anti-trust laws against plaintiff and said Distributors, or any of them, based upon the facts hereinabove alleged during the pendency of this action and until such time as the court shall determine whether or not the plaintiff and defendant have an equal and correlative right to license a prior run with clearance on behalf of their respective theatres."

The prayer was for an adjudication that a grant of clearance between these theatres on first run was reasonable and not a violation of the anti-trust laws; and that the distributors mentioned were entitled to negotiate with Fox and Beacon and other theatre owners equally for prior runs in that competitive area; that pending final decision Beacon be restrained and enjoined from commencing any action under the anti-trust laws against Fox and against the distributors, and that the court grant such further relief, equitable or otherwise, as it deemed proper or necessary in the premises.

Thereafter Beacon filed its "Answer, Counter-Claim and Cross-Claim and Demand for Jury Trial", in which it put in issue the allegations of the complaint.[2] The counterclaim and cross-claim con-

---

2. By way of further answer and affirmative defense Beacon alleged the making of an agreement and conspiracy in restraint of trade and to monopolize trade and commerce in violation of the Sherman Act, which was also set forth in defendant's counterclaim. This portion of the answer was stricken on motion.

tained extensive allegations asserting that the plaintiff and certain other owners of local theatres at or near San Bernardino, together with the above mentioned distributors, entered into an agreement, combination or conspiracy in unreasonable restraint of trade in violation of § 1 of the Sherman Act and a continuing combination and conspiracy to monopolize trade and commerce in violation of § 2 of that Act. Beacon asked judgment in its favor on the cause of action asserted in plaintiff's complaint. It prayed for judgment against Fox (and against another local theatre owner which had intervened on the side of Fox) for three-fold damages in the sum of $300,000, and for injunction against continuation of the alleged conspiracy. Jury trial was demanded "with respect to the complaint, answer, counterclaim and cross-claim."

Asserting that defendant Beacon was not entitled to have the issue presented by the complaint tried to a jury, Fox moved to strike the demand for jury trial on the complaint and the answer thereto. The respondent Judge granted the motion and ordered the issues presented by the plaintiff's complaint to be tried to the court without a jury; he also granted the plaintiff's further motion for a separation of the issues raised by the complaint and the answer thereto from the anti-trust issues raised by the defendant's counterclaim and cross-claim,[3] and ordered the issues under the complaint and the answers thereto to be tried to the court without a jury in advance of and separately from defendant's counterclaim and cross-claim for damages under the anti-trust laws.

Thereupon Beacon, after procuring leave from this court filed the petition now before us praying for a writ of mandamus requiring the respondent to vacate his order striking the demand

for jury trial as to the complaint and answer and the order setting for trial the issues of the complaint prior to the trial of the counterclaim, and that respondent be directed to proceed with a jury trial of all issues of the complaint, answer and counterclaim susceptible of such mode of trial. The petition sets forth the history of the proceedings in the respondent court as above outlined and no issue of fact in respect thereto is raised by the response.

Beacon asserts that the orders of the respondent above mentioned which petitioner seeks to have vacated and cancelled, will operate to deprive petitioner of its right to a jury trial, and that if the respondent proceeds, as he proposes to do, the jurisdiction of this court and its opportunity to hear an appeal from any final judgment in the case would be frustrated in that the whole trial without a jury would go for naught and the whole case would have to be tried again. Under these circumstances, Beacon says, the extraordinary writ of mandamus in this court is the appropriate remedy, citing in support of that position Ex parte Simons, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094; Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919; Ex parte Skinner & Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912, and United States Alkali Export Ass'n v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554.[4]

The primary question to be determined by us is whether petitioner is correct in its claim that it was the duty of the respondent to proceed in such manner as to afford petitioner a jury trial upon all the issues presented by its counterclaim. It will be noted that if matters proceed in the respondent's court in the manner now directed, the court, sitting without a jury, will first try the issues raised by the complaint of Fox and

---

3. As noted above, the answer set forth as a "further answer" and as an "affirmative defense" the same conspiracy alleged in the counterclaim. This order also struck these portions of the answer.

4. Petitioner also cites to the same effect: Bereslavsky v. Caffey, 2 Cir., 161 F.2d

499; Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862; Canister Co. v. Leahy, 3 Cir., 191 F.2d 255, it contends that its position is sustained by the reasoning in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290.

the answer of Beacon thereto, including the issues between the parties as to whether Beacon's theatre is in substantial competition with Fox's California Theatre or with other theatres located in the San Bernardino area.

Beacon's position is that the real controversy between the parties is whether it is entitled to recover from Fox damages for the latter's alleged violation of the anti-trust laws. It says that by filing its suit for declaratory relief Fox has merely anticipated this suit for damages in which it was a prospective defendant and in which a right to trial by jury would exist; that if a court may do what respondent has done here, then any time a prospective defendant anticipates that he is about to be sued in an action at law he could avoid a trial by jury by first filing a complaint for declaratory relief and thus deny a prospective plaintiff the jury trial which the latter is entitled to have under the Seventh Amendment. Petitioner relies principally upon this court's decisions in Pacific Indemnity Co. v. McDonald, 9 Cir., 107 F.2d 446, 131 A.L.R. 208, and Dickinson v. General Accident Fire & Life Assur. Corp., 9 Cir., 147 F.2d 396.

In the McDonald case, an insurance company sought a declaratory judgment as to its liability on an automobile insurance policy, alleging that it was relieved of liability on the policy because of the insured's refusal to cooperate as required by the policy, through fraudulent collusion with the injured party. The trial court tried the question of collusion without a jury and ordered the other issues raised by the complaint to be tried by a jury. The judge made findings against the insurance company upon the issue which it tried, and there was verdict and judgment for the defendants. Plaintiff appealed contending that the entire case should have been tried by the court without a jury. This court held that the entire case should have been submitted to the jury, saying: "It follows from what we have said that we simply have a situation herein where a party who has issued a policy of insurance anticipates a suit thereon by the insured or one subrogated to his rights and to avoid delay brings the matter before the court by petition for declaratory relief. In such a proceeding, although the parties are reversed in their position before the court, that is, the defendant has become the plaintiff, and vice versa, the issues are ones which in the absence of the statute for declaratory relief would be tried at law by a court and jury. In such a case we hold that there is an absolute right to a jury trial unless a jury has been waived." 107 F.2d at page 448.

The Dickinson case was also an action by an insurance company seeking declaration of non-liability on an automobile insurance policy. The defendants sought affirmative relief and a money judgment. Their demand for a jury trial was granted but the verdicts returned for them were treated by the trial court as advisory only and the court rejected them and made its own findings for the plaintiff insurance company. This court reversed, citing its decision in the McDonald case, and holding that the right to a jury trial of such factual issues ordinarily triable to a jury was expressly preserved by the declaratory judgment statute.

Asserting that the facts here are substantially the same as those in the McDonald and Dickinson cases, petitioner says: "Fox West Coast has elected to escape from the role of defendant and become a plaintiff for the express purpose of avoiding the inevitable trial by jury of a suit for damages under the Sherman Act." If this case were as simple as the McDonald and Dickinson cases, its decision would present few difficulties. Rule 57, Rules of Civil Procedure, 28 U.S.C.A., relating to the procedure for obtaining a declaratory judgment preserves the right to trial by jury in cases of that character.[5] But the case

5. "Rule 57. Declaratory Judgments—The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C., § 2201, shall be in accordance with these

presented here, as we see it, is more difficult.

The complaint which was filed in the respondent's court seeking declaratory judgment contains not merely the allegations of the circumstances of the actual controversy between the parties with respect to whether their theatres are substantially competitive with each other, and as to whether the plaintiff Fox could properly negotiate for prior runs and clearances within the meaning of the Paramount Pictures decree, in addition it contains allegations which Fox says show that it is entitled to equitable relief against threatened conduct on the part of Beacon which, unless enjoined, will operate seriously to interfere with the operation of Fox's California Theatre and cause Fox irreparable injury and damage for which it has no adequate remedy at law. In other words, Fox contends that its complaint in respondent's court sets forth grounds entitling it to relief in equity and that its complaint is more than a mere application for declaratory relief.

It seems obvious that if this contention be correct, and if the case presented by the complaint falls within the category of a recognized and traditional suit in equity, then we have a problem here which was not presented in either the McDonald or the Dickinson cases. The question is, if plaintiff files a suit in equity against the defendant, and defendant responds with a cross-action at law against the plaintiff, and if some issues are common to both the suit in equity and the action at law, is it the duty of the trial judge to try both cases simultaneously or to try the action at

law first, or is it within the discretion of the judge to try the equity suit first? If it be assumed that ordinarily the trial judge has such discretion, is that discretion qualified or modified under circumstances shown to exist in this particular case? In an effort to deal with these questions we proceed first to inquire whether Fox's original complaint did set forth grounds for the exercise of equitable jurisdiction.

The allegations which are relied upon as stating a basis of equitable relief by way of injunction are set forth in paragraph XII of the complaint and have been quoted above. There it is alleged that Beacon has threatened Fox and has threatened the named distributors of films that if Fox's California Theatre is granted any clearance over Beacon's theatre or granted a prior run, defendant will treat that as an overt act on the part of the distributor and the plaintiffs in restraint of trade and in violation of the Sherman Anti-Trust Act; and that in that event defendant will sue for treble damages under the Clayton Act. It is further alleged in substance that these threats amount to duress and coercion upon the distributors which operate to deprive the plaintiff of its right to negotiate for motion pictures upon their first run in the area and to negotiate for clearance over competing theatres, including defendant's theatre; that plaintiff is without any speedy or adequate remedy at law and will be irreparably harmed unless defendant be restrained and enjoined from continuing these threats and from instituting any action under the anti-trust laws against plaintiff and the distributors.[6]

rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

6. It may be that the portion of the pleading here referred to is not a model of

pleading. Thus, it refers to plaintiff's demand that defendant be "restrained and enjoined from instituting any action under the anti-trust laws." It seems plain from the allegations generally, and from the prayer for general equitable relief that plaintiff was seeking an injunction not merely against the institution of an anti-trust suit but against the threats, duress and coercion upon the distributors.

We read the allegations in the light of the rules for construing pleadings laid

■■ It is well settled that where a defendant engages in conduct or threatens to engage in conduct calculated to violate or interfere with a plaintiff's right of property or of contract, equity will enjoin that conduct in any case in which it appears that the plaintiff is without an adequate remedy at law. Cf. Pomeroy's Equity Jurisprudence, 5th Ed., § 1338. And this is true although the property or contract or other similar rights which plaintiff seeks to protect may be said to be legal rights. Furthermore, it is also clear that the rights which are entitled to protection of this kind, fall within a very broad definition of property or contract rights;—they include within the category of property rights "any civil right of a pecuniary nature." International News Service v. Associated Press, 248 U.S. 215, 236, 39 S.Ct. 68, 71, 63 L.Ed. 211.[7] This right to protection by way of injunction against interference with property or contracts or other pecuniary rights, has been applied so as to protect a person in his right to earn a livelihood and to continue in employment unmolested by efforts to enforce void state statutes. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131.

Recently this court applied the same rule in the protection of the right of merchant seamen to seek prospective employment in order to earn a livelihood. It stated that such right "was one entitled to protection at the hands of a court of equity. * * * The right of

action here would appear to be founded upon the same equitable principles declared in the Truax case." Parker v. Lester, 9 Cir., 227 F.2d 708, 713. In Metro-Goldwyn-Mayer Corp. v. Fear, 9 Cir., 104 F.2d 892, 899, this court held that a plaintiff was entitled to injunctive relief against intentional and wrongful acts operating to interfere with the plaintiff's probable expectancy of having its customers continue to deal with it. In that case, the appellee, holder of a patent covering a film developing machine, the use of which had been licensed to plaintiff, and which plaintiff used in developing film procured from its customers, sent letters to the plaintiff's customers threatening to sue them for infringement. This court held that the sending of these letters was improper; that there was a reasonable probability that damages would result from such conduct, and "under such circumstances, the appellant was entitled to an injunction." In so holding it is plain that this court recognized that a reasonably probable expectancy of economic advantage from prospective dealings with others, is in the nature of a property right entitled to protection through the issuance of an injunction in equity whenever it appears that there is not a complete and adequate remedy at law. "A large part of what is most valuable in modern life seems to depend more or less directly upon 'probable expectancy.'" Jersey City Printing Co. v. Cassidy, 63 N.J.Eq. 759, 765, 53 A. 230, 233.[8]

down in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. The same rule requires us to disregard the fact that plaintiff alleged that defendant "has stated to plaintiff in substance and effect that it has threatened the distributors", instead of alleging in so many words that defendant has threatened the distributors.

7. "In order to sustain the jurisdiction of equity over the controversy, we need not affirm any general and absolute property in the news as such. The rule that a court of equity concerns itself only in the protection of property rights treats any civil right of a pecuniary nature as a property right (cases cited); and the right to acquire property by honest labor

or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired."

8. This case is cited with other cases dealing with "precontractual interferences" in Harper & James, "The Law of Torts", § 6.11. Included is the celebrated case of Keeble v. Hickeringill, 1707, 11 East 574, 103 Eng.Rep. 1127, where defendant was charged with the deliberate discharge of firearms for the purpose of frightening wild ducks away from plaintiff's pond on which plaintiff had placed decoys. The authors said: "Here again, as in the case of inducing breach of contract, the principle is that intentional interference with another's efforts to enter into prof-

In Berrien v. Pollitzer, 83 U.S.App.D. C. 23, 165 F.2d 21, 22, the court held that this right to protection by injunction even extended to a plaintiff's right not to be excluded from a political party's headquarters. The court points out that injunctions and similar equitable remedies are available for protection of rights which are not strictly property in the more limited sense of that term. The court quoted with approval the statement of the Supreme Judicial Court of Massachusetts: "We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions by which it will protect property rights by injunction."

■ Turning then to the complaint in this case, it is there manifest that Fox seeks protection for its "right to negotiate for motion pictures upon their first-run in the San Bernardino area and to negotiate for clearance over theatres in competition with plaintiff's said theatre upon said first-run including defendant's Bel-Air theatre." The authorities which we have cited disclose that a right so to negotiate, sufficiently partakes of the nature of a property right or sufficiently resembles a property right as to be entitled to protection through the use of the injunctive process against intentional and wrongful acts calculated to destroy it, provided only that there is not a complete or adequate remedy at law.

■ It has long been recognized that a person having an existing contract for the acquisition of property or services or other things of value may have equitable relief by way of injunction against a third person who with knowledge of the contract performs acts designed to induce the breach of the plaintiff's contract. All that need be proven in such cases is that the attempted interference by the third person with plaintiff's contract and his attempts to induce the other party to the contract to breach it is done intentionally. Meyer v. Washing-

ton Times Co., 64 App.D.C. 218, 76 F.2d 988, 992. In the present case, it is not asserted that defendant is attempting to bring about a breach of presently existing contracts between the plaintiff and the distributors. As we have noted, the alleged threats and duress are designed to deprive plaintiff of its opportunity to negotiate for future contracts. The cases previously cited sufficiently show plaintiff's right thus to negotiate for contracts as a part of its normal method of doing business is as much entitled to protection as any property or contract right in the more traditional sense. This was recognized long ago by this court in Sailors' Union of the Pacific v. Hammond Lumber Co., 9 Cir., 156 F. 450, where we held that a plaintiff was entitled to an injunction to protect it in this right to contract to employ labor.

The same rationale supports the decisions upholding the issuance of injunctions to protect against unfair competition in which of course the anticipated damage to the plaintiff arises from his inability to conclude new contracts with prospective customers because of the wrongful acts of the defendant. The same reasoning supports the numerous decisions to the effect that the liability of a third person for procuring a breach of contract on the part of another is in no manner altered by the fact that the contract in question is one terminable at will.[9]

■ It sufficiently appears here that threats addressed to the distributors threatening suit or prosecution under the anti-trust acts would be calculated to make it impossible for plaintiff to negotiate for or procure such first-run pictures or clearance from the distributors. The acts of the defendant Beacon which are here complained of are not different from the threatening letters of the defendant in Metro-Goldwyn-Mayer Corp. v. Fear, supra, with respect to which this court held the plaintiff was entitled to an injunction. It is also plain

itable contractual relations is actionable unless it falls within the area of socially acceptable conduct which the law regards as privileged."

9. See the numerous cases collected in a note at 84 A.L.R. at pages 60 to 63.

that so far as an action by the plaintiff is concerned, it has available to it no adequate remedy at law. As this case reaches us we must assume that the plaintiff is in a position to prove and establish the facts alleged in its complaint. If those facts be true, then plaintiff was likely to be obliged to operate its California Theatre without the advantage of first-runs or clearances, for some if not all of the distributors were likely to be deterred from so dealing with plaintiff because of Beacon's threats. Such threats carry with them the implication that the distributors also may have to defend treble damage suits. At any rate, just how much effect these allegedly wrongful acts of the defendant will have, and how much the damages will amount to are not susceptible to ready ascertainment. As this court said in Sailors' Union of the Pacific v. Hammond Lumber Co., supra, (156 F. at page 455) "One ground of equitable jurisdiction in cases of continuing trespass is the fact that the measure of damages is exceedingly difficult of ascertainment. * * * And relief by injunction may be invoked as a remedy for the destruction of one's business, if in such a case no action at law would afford as complete, prompt, and efficient a remedy."

This brings us to the question whether as the case now stands in the respondent's court, Fox may be said to have an adequate remedy at law through its opportunity to defend the counter action brought against it by Beacon. We think

that the question whether the plaintiff stated a claim properly triable before the court sitting in equity must be judged as of the time when the complaint was filed. At that time, October 31, 1956, the defendant had brought no suit; all that plaintiff was confronted with at that time were the threats and duress directed to it and to the distributors. The counterclaim was not filed until February 18, 1957. Obviously prior to the time when it filed its complaint plaintiff was not in a position to compel the bringing of an action by the defendant at any stated time. Consistently with the allegations of the complaint defendant, unless enjoined, could go on indefinitely threatening the distributors and the plaintiff with future suits; and as long as the threats worked, defendant would have its way and the business of the plaintiff would be seriously limited. We think that we must accept what was said in a somewhat comparable case of American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605, "The argument is made that the suits in equity should have been dismissed when it appeared upon the trial that after the filing of the bills, and in October, 1932, the beneficiaries of the policies had sued on them at law. But the settled rule is that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter." [10]

In directing that the issues raised by the complaint be tried separately

10. We assume that if Beacon's action for treble damages was actually filed and pending on the date when plaintiff filed its complaint, that plaintiff might have had an adequate remedy at law by interposing its defense to Beacon's action. While we make that assumption for the purpose of this case, it is not altogether certain that such defense would furnish an adequate remedy. Thus throughout the period that the treble damage suit was pending, Beacon might well continue to make threats of the same nature against the distributors, threatening a series of such suits against them collectively or severally.

Conceivably this could continue at least until the treble damage suit had finally terminated in some court of last resort. It might possibly continue thereafter if Beacon claimed that additional or new facts then warranted a new round of treble damage suits. The very pendency of Beacon's suit throughout that time would tend to reinforce the strength of the threats. Moreover, we do not overlook the circumstance that because of its penalty aspects a threat of a treble damage suit is potentially more frightening than threats of an ordinary damage action.

from defendant's counterclaim and cross-claim for treble damages, the respondent purported to act under the authority of Rule 42(b) Rules of Civil Procedure: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." The question is whether, notwithstanding that provision, some other rule or requirement relating to the right to trial by jury prohibited the respondent from directing that the issues raised by the complaint be first tried by the court without a jury and that the issues raised by the counterclaim be tried subsequently. There is no doubt that that procedure if carried out will operate in some degree to limit the petitioner's opportunity fully to try to a jury every issue which has a bearing upon its treble damage suit. The complaint, as noted, presents the issue as to the existence of substantial competition between the parties in the San Bernardino area. This also is an issue raised by the counterclaim. Petitioner is correct in saying that if this issue be first tried and determined by the court in its proposed first trial the determination of that issue by the court will operate either by way of res judicata or collateral estoppel so as to conclude both parties with respect thereto at the subsequent trial of the treble damage claim.

■ It seems plain enough that a party who is entitled to maintain a suit in equity for an injunction may have the issues therein determined by the court without a jury notwithstanding they involve a trial and determination of legal rights. No authority need be cited in support of this proposition, for illustrations of such cases are numerous. For example, in a suit by one in possession of real property to quiet title, or to remove a cloud on title, the court of equity may determine the legal title. In a suit for specific performance of a contract, the court may determine the making,

validity and the terms of the contract involved. In a suit for an injunction against trespass to real property, the court may determine the legal right of the plaintiff to the possession of that property. Cf. Pomeroy, Equity Jurisprudence, 5th ed., §§ 138–221, 221a, 221 b, 221d, 250.

Petitioner asserts that notwithstanding all this, the requirements of the Seventh Amendment and of Rule 38 of the Federal Rules of Civil Procedure which recites that the right of trial by jury as declared by the Seventh Amendment shall be preserved to the parties inviolate, operates to qualify the court's right to order a separate trial of any claim under Rule 42(b), supra, so that under the circumstances here present, where both an equitable and a legal cause of action are present in a single proceeding, the court must of necessity try the legal claim first so that any issue of fact common to both actions may first be tried by jury. Some of the language used by this court in Bruckman v. Hollzer, 9 Cir., 152 F.2d 730, 732, lends support to such an argument. In that case, the complaint sets forth separately three sets of transactions upon which plaintiff claimed relief. In the first count, plaintiff sought recovery for money damages on account of alleged infringement of copyrights; in the second count, plaintiff sought an accounting for profits received by defendant through the appropriation of copyrighted matter; in the third count it was alleged that the defendant had infringed and intended to continue to infringe plaintiff's copyright, and plaintiff sought to enjoin the defendant from so continuing in such wrongdoing. Judge Hollzer, the respondent, who was the district Judge before whom the action was pending, ruled that he would commit the trial of the first cause of action to a jury to be tried at common law, and in his return to the petition for writ of mandamus, stated that he would simultaneously try without the jury the second and third causes of action "to the extent practicable." The defendants in the action

then petitioned this court for mandamus to compel the respondent Judge to strike the demand for a jury trial and to hear and determine without a jury all three claims. It was noted that the issue of infringement was common to all three sets of transactions, and that if the right of jury trial of the issues raised by the first count was to be preserved, the jury's verdict upon that count would have to be entered before the claims under the second and third counts were decided. It was said that a consideration of Rule 38(a), preserving the right of trial by jury, when read in connection with those provisions of the rules which permit district courts to hear both equity and common law claims in a single suit, made it mandatory that the trial judge try the cause of action properly triable to a jury before the others. It was suggested that this was the only manner in which the right to trial by jury could be preserved. The court indicated that a change had been effected by the adoption of the rules which it says accomplished "a long forward step in our judicial procedure."

It is to be noted, however, that the court simply denied the writ of mandamus. The respondent Judge there had ruled that he would permit the return of a verdict in the common law action in advance of the entry of any findings by the court upon the second and third causes of action, which were taken to be equitable in character. What this court said about the trial judge being *required* first to try with a jury the issues in the first cause of action was unnecessary to the decision. The actual decision was just as consistent with the view that it was within the discretion of the district judge under Rule 42(b) to determine which causes of action should be tried first.

This court has had occasion in later decisions to point this out, and in each instance it has rejected arguments that the Hollzer case decided that the judge must first try the legal cause of action. In Tanimura v. United States, 9 Cir., 195 F.2d 329, the United States sued Tanimura for violation of maximum rent regulations and sought (1), an injunction against further violations; and (2), treble damages for the overcharges prior to the institution of the suit. The trial judge first tried the issues upon which the government based its claim to an injunction. The case went against Tanimura who objected that he was entitled as of right to a jury trial. We said: "It was within the sound discretion of the court as to whether the equitable issues or the law issues should take precedence in trial." The opinion quoted from and followed Orenstein v. United States, 1 Cir., 191 F.2d 184. The appellant on petition for rehearing asserted that this ruling of the court was contrary to Bruckman v. Hollzer, supra. We noted, however, that the latter case was not to the contrary; that it merely held that the right of trial by jury extends only to issues not necessary or incidental to the equitable jurisdiction. This view of the Hollzer case was reinforced in Institutional Drug Distributors, Inc. v. Yankwich, 9 Cir., 249 F.2d 566, 570, where this court in holding it to be within the discretion of the trial judge to decide whether the equitable cause or the common law cause should first be tried, said in footnote 10: "Bruckman v. Hollzer, * * * does not hold to the contrary, as it, in effect merely affirms the election of the trial court to try jury and non-jury issues contemporaneously."

We think these later decisions correctly point out that the Rules of Civil Procedure referred to in the Hollzer case were not designed to make any substantial change in the right to jury trial or to alter any pre-existing right of the trial judge to determine in his discretion whether trial of the suit in equity shall be prior to the submission of the issues in the legal action in any case where, as here, both types of action are presented by the pleadings. The rule stated in the Tanimura case, supra, is the same as that recognized prior to the adoption of the rules, namely, that the question as to which of the two types of actions should be tried first remains primarily

within the discretion of the trial judge and is for the determination of that judge after consideration of various factors of fairness and convenience. Thus in American Life Ins. Co. v. Stewart, supra [300 U.S. 203, 57 S.Ct. 380], where the plaintiff's bill in equity for cancellation of the insurance policies was followed by actions at law brought by the beneficiaries in the same court to recover the insurance, the court, after holding that the suit in equity was properly brought and was within the court's equitable jurisdiction, disclosed that the parties had stipulated that the suit in equity should be tried first. The court noted that had this stipulation not been made, a different arrangement might have been made, stating that in the exercise of a sound discretion the court could hold one action in abeyance to abide the outcome of another and said, (perhaps by way of dictum), that in the absence of the stipulation "If request had been made by the respondents to suspend the suits in equity till the other causes were disposed of, the District Court could have considered whether justice would not be done by pursuing such a course, the remedy in equity being exceptional and the outcome of necessity. * * * There would be many circumstances to be weighed, as, for instance, the condition of the court calendar, whether the insurer had been precipitate or its adversaries dilatory, as well as other factors. In the end, benefits and hardship would have to be set-off, the one against the other, and a balance ascertained." Plainly this suggests that after consideration of matters of the character there mentioned, it would be within the discretion of the court to determine which suit or action should be tried first. It thus appears that such was the case before the adoption of the Rules. Our decision in the Tanimura case, supra, says such is still the rule.

It was in that case that we adopted and approved the reasoning of the First Circuit in Orenstein v. United States, supra, a case in which certain identical questions of fact were presented in both equitable and legal causes of action. That court noted that if the judge chose to exercise his discretion so as first to make findings of fact in the equity portion of the proceedings upon such common issues, those findings would be binding upon all parties, and in respect to them there would be no opportunity to relitigate them before the jury on the later trial of the legal action for damages.

Considerable reliance is placed upon the case of General Motors Corp. v. California Research Corp., D.C.Del., 9 F.R. D. 565. In that case, apparently influenced by certain language used in Moore's Federal Practice, the court said (at page 568): "It seems equally clear that where the complaint contains matter which is equitable in character and the counterclaim is legal in character, the court must determine the nature of the basic issues and if these are legal in character a demand for a jury trial must be granted." The judge concluded that the basic issues in that case were legal in character and that he was obliged to order a jury trial. The basic "issue" test to which the court there referred was plainly enough appropriate under the facts of that particular case which was not only primarily but exclusively an action for declaratory relief. It sought declaratory judgment of invalidity of two patents and of non-infringement by the plaintiff. The action was purely negative in character seeking a declaration that plaintiff was not liable upon defendant's claimed cause of action, but there were no allegations similar to those contained in paragraph XII of the complaint in this case which would disclose any basis for an independent suit in equity.

It is true that the plaintiff in the General Motors case, just cited, added a prayer for an injunction against a suit by the defendant for infringement of defendant's patent, but as the court remarked, this prayer did not operate to create any basic issue. Obviously it was a mere adjunct to the prayer for a decla-

ration of rights. In the present case the complaint would resemble the complaint in the General Motors case if it contained nothing beyond paragraph XI which is quoted above, and if paragraph XII were entirely omitted. What is wrong about the language quoted above from the General Motors case is its assumption that the complaint contains matter which is equitable in character. The statement as quoted is dictum The complaint contained no such matter. In an effort to make use of the general language thus quoted Beacon argues that a basic issue here was whether the theatres are competitive or not. The contention is that this issue, which is common both to plaintiff's complaint in equity and to the cross-action at law, is necessarily legal in character and hence under the rule stated by the judge in the General Motors case, there must be a jury trial.

■■ Where a typical complaint seeking declaratory relief, and nothing more, is filed, it is appropriate to adopt the language which Moore uses in dealing with such cases,—that the question as to the mode of trial "should be governed by a determination as to whether the basic nature of the issue is 'legal' or 'equitable'." The plaintiff seeking declaratory relief must contemplate that if he is seeking declaratory relief against a projected legal action by the defendant, the case will be for trial before a jury. Rule 57 so states.

But if the complaint be not a mere complaint seeking a declaration of rights but is in and of itself a statement of a claim within the exclusive jurisdiction of a court of equity, then the question is not so simple. If basically the nature of the plaintiff's complaint is one which alleges facts appropriate to a suit in equity such as the complaint now before us, the court is presented with a claim the basic nature of which is equitable, and it is of no consequence that some of the fact issues might under different circumstances be appropriate fact issues in an action at law.

As we have previously indicated, many questions of fact are appropriately presented either in a suit in equity or in an action at law. Thus the question of title or right to possession to land, viewed as a question of fact, is appropriate in an action of ejectment but it is equally appropriate in a suit to quiet title. That Moore recognized this, is plain from his discussion in the sections mentioned. Some of his statements are noted in the margin.[11] It is plain from

---

11. From § 38.16, p. 152, 5 Moore's Federal Practice: "Under certain circumstances a party to a contract may have the choice of damages for breach, or specific performance and incidental damages. If he chooses to seek only damages the issues are legal; if he chooses specific performance and incidental damages all the issues are equitable.

     *     *     *     *     *

"By way of contrast take a different case as where the plaintiff sues for specific performance, the defendant pleads certain matter as a defense, and then also uses that matter as a basis of a legal counterclaim. The basic issue is whether the plaintiff has a valid contract, which is entitled to specific performance: if this is determined in his favor by the court that ends the case; only in the event that the defendant prevails as to the factual basis of his defense would issues, probably only as to the amount of damages, remain for jury trial.

"Where the controlling issue in a case is whether a contract should be reformed, the basic issue is equitable: whether the plaintiff seeks reformation so that he is entitled to recover on the reformed contract; or whether the plaintiff seeks reformation and the defendant interposes a legal counterclaim to recover on the contract as written."

(p. 151) "And the same principles apply where the plaintiff claims damages for injury to his property, and also seeks an injunction against future acts: the legal claim is basic. Here, however, the plaintiff could formulate his claim as one for an injunction with damages as an incident thereto: the basic issue would then be equitable and would carry with it the determination of the damages.

"The basic nature of the issue in patent litigation will also depend upon the patentee's choice of remedy: an action by the patentee to recover damages under 35 USC § 67 presents legal issues; an action by the patentee under 35 USC §

his discussion that he would say that in this case, upon the filing of this complaint, all of the issues thereby presented were equitable. This is true notwithstanding that under other circumstances some of the same questions of fact presented in this suit in equity might also be questions of fact in an action at law.

We note that in Leimer v. Woods, 196 F.2d 828, 836, the Eighth Circuit disapproved of the decision in Orenstein v. United States, supra, and cited with approval the Bruckman case without noting that the language of the latter case has been qualified and explained in Tanimura. Institutional Drug Distributors, supra, makes that plain. The Leimer case supports petitioner's position here,[12] but for the reasons we have indicated we cannot agree with it.

■ It is our view that it is the doctrine of both the Tanimura and the Institutional Drug Distributors cases that the determination pursuant to Rule 42(b) as to whether the legal or the equitable claim or cause of action should first be tried is within the discretion of the trial judge. Of course, in exercising that discretion he should have in mind the considerations noted in the language previously quoted from American Life Ins. Co. v. Stewart, supra, where it is suggested that the circumstances to be weighed are: whether plaintiff was precipitate or defendant dilatory, the condition of the court calendar, and the benefits and hardships involved. The time for weighing those considerations was when the respondent made his order. Nothing here indicates an abuse of that discretion.

No suggestion is made here that because the respondent judge could proceed to try the equitable injunction suit first, he could then proceed and take the

further step of trying the questions presented by the counterclaim for damages under the ancient rule that the Chancellor may retain jurisdiction so as to grant complete relief. The respondent's order made it plain that there was no such proposal here. No doubt the statute requires the damage claim to be tried by jury. Cf. Decorative Stone Co. v. Building Trades Council, 2 Cir., 23 F.2d 426. The order preserves that right.

Since we have thus determined that the order of which petitioner complains was one within the discretion of the respondent, it is necessary to pass upon the questions relating to the writ of mandamus.

The petition for writ of mandamus is denied and the rule to show cause is discharged.

---

70 for an injunction and damages presents equitable issues."

12. The court there said: "In summary, a federal court may not under the Rules of Civil Procedure, in a situation of joined or consolidated equitable and legal causes of action, involving a common substantial question of fact, deprive either party of a

properly demanded jury trial upon that question, by proceeding to a previous disposition of the equitable cause of action and so causing the fact to become res judicata, unless there exist special reasons or impelling considerations for the adoption of such a pre-empting procedural course in the particular situation."